## THOMPSON *against* DAVIES.

A. and B having executions against C, of which A.'s execution was the elder lien, and C. being indebted to D, it was agreed between A and D. that A should pay D. 225 dollars ; that, at the sale under the executions. A. should bid off the personal property of C. to the amount of his execution, and that D. should bid off the real property of C., to the amount of B's execution, should dispose of the same, and after satisfying his own demands against C. should refund A the said sum of 225 dollars. A. and D, at the sale, bid off the property of C in conformity to the agreement, and D. disposed of the real estate, and, after satisfying his own demands against C., there was a sufficient surplus to repay A., and A. brought his action to recover the money: *Held,* that although here was a sufficient consideration to support D's promise, yet that the agreement itself was void, being contrary to public policy, as it was an agreement tending to prevent competition at a sale under execution, and thus injurious to the original debtor.

THIS was a motion in arrest of judgment. The declaration was in *assumpsit,* and contained six counts, on a special agreement.

The first count stated, that on the 11th of *July,* 1808, a *fi. fa.* was issued out of this court, at the suit of the plaintiff, against one *Doughty,* for 765 dollars debt, and 14 dollars and 60 cents damages, to the sheriff of the county of *Dutchess,* by an endorsement on which the sheriff was directed to levy 381 dollars and 87 cents debt, with interest, and 17 dollars and 91 cents costs ; and that, on the 11th of *July,* 1808, another *fi. fa.* was issued out of this court, at the suit of the bank of *Columbia,* against the said *Doughty,* for 994 dollars debt, and 15 dollars and 25 cents damages, to the sheriff of *Dutchess,* by an endorsement on which he was directed to levy 447 dollars debt, with interest, and 18 dollars and 56 cents costs, which last-mentioned writ was younger than that in favour of the plaintiff, as to its lien, both on the real and personal property of *Doughty ;* by virtue of these writs, the sheriff levied upon all the personal property of *Doughty,* and, also, upon a certain farm, and exposed the same to public sale ; that before the time of the sale the defendant, as one of the firm of *William Davies & Co.,* and the plaintiff, had endorsed a certain note for *Doughty,* at the bank of *Columbia,* for the sum of 500 dollars, which note was paid and satisfied to the bank, by a note of the same amount drawn by the plaintiff and given to the bank ; that, at that time, the defendant had divers large demands against *Doughty,* amounting to a large sum, to wit, the sum of 1,000 dollars, or upwards, and the personal property not being sufficient to satisfy the plaintiff's execution, and, on the 28th of *September,* 1808, the real and personal property of *Doughty* being offered for sale by the sheriff, it was thereupon agreed between the plaintiff and defendant, as follows : the plaintiff agreed that he would bid at the sale, for the personal property, to the amount due on the *fi. fa.* in his favour, and would permit the real property to be bid off by the defendant, under the *fi. fa.,* in favour of the bank of *Columbia,* and that he would pay to the defend-

ant the sum of 225 dollars, part of the sum of 500 dollars above mentioned; in consideration of which promises, the defendant agreed to pay to the plaintiff the sum of 500 dollars, or that he would take up and discharge the note for that sum, given by the plaintiff to the bank of *Columbia ;* and that he would bid off the real estate under the execution of the bank of *Columbia*, to the amount due on the same, and would dispose of the same to the best advantage, and, after satisfying himself out of the proceeds, should, out of the residue, repay to the plaintiff the said sum of 225 dollars. And the plaintiff averred that, in pursuance of the agreement, he did, on the 28th of *September*, pay to the defendant the said sum of 225 dollars, by giving him his note, payable on demand, with interest, which note has since been paid; and did, on the sale, bid up the personal property to the amount of, and in satisfaction of his execution; and that, at the sale, the defendant bid off the real estate under the execution of the bank of *Columbia*, and the same was conveyed to him by the sheriff; that, afterwards, and in, or about, the month of *February*, 1809, the defendant sold the real estate for a large sum of money, to wit, the sum of 3,000 dollars, or upwards; and the plaintiff averred, that all the demands of the defendant against *Doughty* did not amount to the sum which the defendant so received, by a large sum, to wit, the sum of 1,500 dollars, being a surplus more than sufficient to pay the plaintiff the said sum of 225 dollars; by means whereof, &c.

The second count stated the issuing of the two executions before the 28th of *September*, 1808, and that the execution of the bank of *Columbia* was for the benefit of the defendant, and was younger than that in favour of the plaintiff, as to its lien, both on the real and personal estate of *Doughty ;* that the sheriff had levied upon the personal and real property of *Doughty*, and offered them for sale on that day; and that, at and before the time of the sale, the defendant had divers demands against *Doughty*, amounting, in the whole, to a large sum, to wit, the sum of 1,800 dollars, or upwards; and the defendant wishing to purchase the real estate free of the plaintiff's execution, in order to secure the execution of the bank of *Columbia*, and the other demands of the defendant, and the personal property not being of sufficient value to satisfy the plaintiff's execution, it was agreed that the plaintiff should bid off the personal property at an amount equal to that due on his execution, in satis-

faction and discharge of the same; and that the defendant would bid off the real estate on the execution of the bank of *Columbia*, and for the amount due thereon; and that the defendant would sell the real estate, and if he should obtain for the same enough, over and above satisfying all his demands against the said *Doughty*, he would pay to the plaintiff the sum of 225 dollars, which had been, before that time, paid to the defendant by the plaintiff, on account of the said *Doughty*; that, at the sale, the plaintiff bid off the personal property to an amount sufficient to discharge his execution, and the defendant did thereupon purchase the real estate, under the execution of the bank of *Columbia*, which was conveyed to him by the sheriff; that, afterwards, in, or about, the month of *February*. 1809, the defendant sold and disposed of the real estate to one *Barton*, for which he received, in property or money, a large sum, to wit, the sum of 3,000 dollars, or upwards, and that the sum greatly exceeded the amount of all the defendant's demands against *Doughty*, by the sum of 1,500 dollars, being more than sufficient to pay the plaintiff the sum of 225 dollars aforesaid; by means whereof, &c.

The other four counts were substantially the same as the second; and the usual money counts were added.

*P. Ruggles*, in support of the motion, cited 3 *Johns. Cas.* 29. 6 *Johns. Rep.* 194. 8 *Johns. Rep.* 444. *Cowp. Rep.* 395. 6. *Term Rep.* 642.

*Oakley*, contra.

SPENCER, J., delivered the opinion of the court.

This case is not distinguishable from that of *Jones* v. *Caswell*, (3 *Johns. Cas.* 29.,) but by the circumstance that *Doughty* was indebted to the plaintiff beyond the sum for which he had obtained judgment and execution, and by the further circumstance that he was indebted to the defendant. The consideration for the defendant's promise was, a forbearance, on the part of the plaintiff, to bid, at the sale on the execution in favour of the *Bank of Columbia*, on the lands of *Doughty*; and, also, that the plaintiff should bid, on the sale of the personal estate of *Doughty*, to the amount of his own execution, which, it is averred, he did, and that such bid was more than the value thereof.

The consideration was sufficient. I agree to the position
advanced by *Radcliff*, J., in the case cited; that the foregoing
some advantage or benefit, or parting with a right which might
otherwise be exerted, is a valid consideration.   The plaintiff,
here, not only agreed to forbear bidding, but, having the prior
*lien*, both on the personal and real estate, he waived it, on the
latter, to his disadvantage, by bidding more, on the personal
property, than its value, so that here was an actual loss to the
plaintiff.

Whatever may have been the motives of the parties, in making
the agreement, and however upright their intentions, the ques-
tion recurs, is not the promise made by the defendant void, as
contravening established principles of public policy? If the
consideration be ever so meritorious, yet, if the act agreed to be
done, and which forms the basis of the agreement, be unlawful,
the promise cannot be enforced in a court of law.

The judges who delivered opinions in the case of *Jones* v.
*Caswell* held, that the law had regulated sales on executions
with a jealous care, and had provided a course of proceeding
likely to promote a fair competition, and that a combination to
prevent a competition was contrary to public policy, and the
interests of the original debtor, whose property was liable to be
sacrificed by such combinations.   The same principle was
recognised in *Doolin* v. *Ward*, (6 *Johns. Rep.* 194.,) and in
*Wilbur* v. *How*, (8 *Johns. Rep.* 444.)   These were cases of
sales at auction; but the principle applies with equal, nay, with
more, force to sales on execution.

It has been urged that the plaintiff was not bound to bid on
the second execution, and was, therefore, at liberty to enter
into this agreement.   That is not the test of the principle.   In
none of the cases cited was the party bound to bid; but, being
at liberty to bid, he suffered himself to be bought off, in a way
which might prevent a fair competition.   The abstaining from
bidding, upon concert, and by agreement, under the promise of
a benefit for thus abstaining, is the very evil the law intends to
repress.   A public auction is open to every one; but there must
be no combination among persons competent to bid, silencing
such bidders, for the tendency to sacrifice the debtor's property
is inevitable.

The principle is of too salutary a nature to permit any refine-
ments which go to sap or subvert it; and, in *England*, the

ALBANY,
January, 1816.

THOMPSON
v.
DAVIES.

ALBANY,
January, 1816.

JACKSON
v.
CREAL.

judges have, uniformly, held a strict hand over every attempt at fraud or circumvention at auctions. (*Cowp.* 395. 6 *Term Rep.* 642.)

The court is, therefore, of opinion that the judgment must be arrested.

Judgment arrested.