Judge Wood
delivered the opinion of the court, as follows:
From the present value of the property in dispute, this case is of exciting .interest to the parties, and we have endeavored to give it a thorough and deliberate examination. The complainants-are the heirs at law of the decedent, and seek to set aside the sale, on the ground that it is opposed to public policy, and that Crosby purchased, as the agent of Perkins, or with full knowledge of the agreement between him and Webb. Though not disclosed in the bill, another reason is also presented in the argument of counsel, and urged with distinguished zeal, and attempted to be sustained with an array of authority, that the administrator is not chargeable with the taxes upon real estate, and has no power to-sell the land for their payment. We shall examine each of these positions in its order, as briefly as its nature and our duty will permit. Should we trespass beyond ordinary limits, an apology must be found,in the endeavor to satisfy the complainants, with the reasons on which our conclusions are built.
It is insinuated in the argument, that some of these respondents intended fraud in fact. That position, we apprehend, may at once be abandoned, for there is not one item of evidence, in the case, that leans, in even a remote degree, to its support. The lands sold were, at the time, well sold. They sold for as much as *land, in August, 1831, would ordinarily sell for, for cash in hand, more than one-half their appraised value; and what more could any reasonable man expect? The inquiry, then, as to fraud, . in fact being dismissed, it remains to be settled, in the next place, *53 whether the agreement between Webb and Perkins is against sound policy and void ? We have seen, by the answers of these defendants, what this contract was, and it is necessary to keep in view all the peculiar circumstances under which it was made, and more especially the fact that it not only appears, from the nature of the transaction itself, and the character in which Webb was acting, but is most indubitably proved, that he had not one particle of interest in the sale, which, it is claimed, resulted from his agreement with Perkins. There is also another feature in the case, which a chancellor, sitting in a matter of conscience, to do right and repress wrong, should, by no means, overlook: that Butler, one of the heirs, and the active one who managed for the whole, requested that this very land should be sold by the administrator. This is inferable, most clearly, from the evidence that he desired land sold out of the county- of Geauga, and agreed to attend the sale of this very property. The administrator, when he came into the office, found the land advertised for the taxes, and to save them, as he supposed, from sacrifice, the arrangement with Perkins was made. Perkins was the only source from whence the money could be obtained. He could advance it, but required, in return, that the administrator should proceed, with diligence, to raise it for him again from the estate. He knew this land would sell; he required that it should be offered, and that the terms should be cash. Was there either moral or legal iniquity in this ? It is said, if .administrators may make any arrangement by which a sale may be influenced, heirs may be defrauded, and it is, therefore, prohibited. We apprehend the rule is not thus extensive; that it is limited to those cases in which the administrator has an interest, or may have an interest, and then the law refuses to trust him to make any contract for his own benefit in relation to the property of the cestuy que trust. Such are the numerous cases .cited, and for this reason, that his interest interferes with his duty. Bmptor emit quam minima potest, venditor vendit quam máximo potest. The counsel for the complainants rely much on the case of Davoue v. Fanning, 2 Johns. Ch. 252. No one entertains .a higher opinion of the learned chancellor who delivered the opinion in that case. He has probably done more *to build up a system of American chancery law than any other man living. His sound discrimination and persevering industry are worthy of *54 all praise. The opinion, in that case, is believed to be law by us j, and it is sustained by a very learned and elaborate analysis of all the ancient and modern decisions to the time it was made. The-analogy, however, between the two cases is not so easily perceived. Fanning was the executor of Davoue, and by an agreement, suffered the property to be purchased in for his wife, and executed a. deed in pursuance of the sale, in trust, for her. The chancellor-remarks : “ Whether a trustee buys in for himself or his wife, the temptation to abuse is nearly the same. His interest interferes with his duty.” And farther, he says : “ The ease, therefore, falls clearly within the spirit of the principle, that if a trustee, acting for-others, sells an estate, and himself becomes the purchaser, or interested in the purchase, the cestuy que trust is entitled to come here, as of course, and set aside the purchase, and have the property re-exposed to sale.” Had the agreement with Perkins been for the benefit of Webb or his wife, the sale must have been set aside; but instead of that, this sale was solely intended by the administrator for the benefit of the complainants. The case of Thompson v. Davies, 13 Johns. 112, is also cited. That was a case-between creditors, who had entered into an arrangement to bid off a debtor’s property, one to purchase the personalty and the other the realty, and pay to his confederate a certain sum of money. It was held by the court that such an agreement was void. That although a creditor was not bound to bid, yet he was at liberty to-do so, and if he suffered himself to be bought off, or silenced, in a way which might prevent a fair competition, or if he abstained from bidding, upon concert, under the promise of a benefit, it was-the very evil the law intended to repress. This principle is, we-think, at the present day universally admitted. It is salutary and necessary to repress fraud and circumvention. 6 Term, 642. In the case at bar there was no agreement to sell to any one, but everything was left open to fair and honest competition. If Perkins bought, he expected to pay more than others. Such is the evidence furnished by his answer. The case of Rogers v. Rogers, Hopkins, 515, was. decided strictly on the same principle with Davoue v. Fanning. An executor took the assignment of a judgment agains this testator, and caused all his landato be sold on execution, and himself became the purchaser. This sale was set aside. The chancellor observed : “ If the executor *had not accepted the trust, he would have been at lib *55 erty to pursue all his remedies for the satisfaction of the judgment ; but where he accepted a trust, which imposed on him the duty of taking every legal and prudent measure to pay the debts of Thos. Eogers, from the personal and real estate, he was no longer at liberty to exert his rights as a creditor in opposition to his duties as executor.” So far as the rights of the executor, as a creditor, were in conflict with his duties as executor, his rights were yielded to his duties. Again, he says, “ a trustee can gain no advantage to himself to the detriment of those for whom he bolds the trust. The most frequent application of this doctrine is in cases in which the trustee purchases the subject of his trust. In such cases equity will vacate the sale. The objects of the rule are to secure fidelity on the part of the trustee and preserve the interests of those whose rights are confided to his care. Mills v. Goodsell, 5 Conn. 475, merely recognizes the same principle, and declares a purchase by a deputy sheriff, on a sale made by him, void not only in equity but at law. Such is undoubtedly the rule in Ohio. Neither a sheriff can purchase of himself, nor an appraiser buy the property on which he has been called to affix a value, and for the same salutary reason, his interest would conflict with his duty. 3 Chase’s Stat. 1713, see. 18. In Hervish v. Grow and Brown, 5 Wend. 579, the administrators had executed a bond by which they covenanted to sell certain real estate of their intestate, as soon as they could obtain the surrogate’s order, for five hundred and fifty-five dollars, and, in default, to pay one hundred dollars, as liquidated damages, and the action was brought to recover the penalty; and the same principle, which runs through all the cases, was repeated by the chief justice. He says, “administrators must sell at auction; they can sell in no other manner. The highest bidder must have the property, and to him the administrators must convey. Suppose a bidder at the auction were to offer six hundred dollars for this property, which the administrators have agreed to sell for five hundred and fifty-five dollars, they must forfeit and pay out of their own pockets one hundred dollars, according to this contract. They have every inducement, therefore, to discourage bidding, whereas their duty requires them to sell at the highest price. Such a contract is highly improper and a violation of the duty of the administrators. It is, of course, contrary to the policy of the statute and void.” We have examined a great many other cases not cited by counsel. Davidson v. *56 Gardner, decided nearly a century ago, in which Lord Hardwick
said, “ the court looks with jealous eye *at the trustee purchasing of the cestuy que trust.” Sug. Law of Tendors, 436; Whelpdale v. Cockson, before the same chancellor, in 1747. It was a bill by a creditor, against the executor, to set aside a sale. Lord Hardwick said, “he would not suffer the sale to stand. He know the dangerous consequence; and it was not enough for the trustee to say you can not prove any fraud, for it is in his own power to conceal it.” We do not know that it is necessary to pursue the cases in the books farther. The rule, in all the cases cited, receives our warmest approbation as a well-settled salutary principle in equity, that where interest and duty conflict, the former must yield, and give place to the latter. But no case can, we think, be found like this, in which the sale has been set aside as against the policy of the laws. What has the administrator done? He preserved the residue of the estate by paying the taxes which, were neglected by the complainants. It is true, one witness testifies he should have discharged them if Webb had not; but this was unknown to Webb. What, then, is this agreement, “ by which heirs may be defrauded?” An agreement by a trustee, in which he had not a shadow of interest, to do what the statute in positive terms authorizes. 3 Chase’s Stat. 1782. Unimproved lands may be sold for one-half their appraised value. The administrator may sell to the best advantage, in his own discretion, for cash or credit, and though the administrator is seldom interfered with, as to the land he shall sell, the selection is, in fact, the act of the court, for the court orders and directs the sale of the specific tracts. This land was sold, in all things, according to the statutory requisitions. It was sold at auction, to the highest bidder, for more than one-half its appraised .value; and in the discretion of the administrator, to the best advantage, for cash; the heirs knew of the sale, desired this land to be sold, and the active complainants agreed to attend the sale. The avails of the sale were immediately paid in discharge of the debt created, by which the taxes were released; and, after all this, it would appear to us that an attempt to avoid this sale, by the complainants, is deserving of severe reprehension.
But if we are wrong in the view we have taken above, this sale can not be disturbed. Crosby purchased without any knowledge of the arrangement between Perkins and Webb. He bought the *57 whole property. In the absence of such knowledge he is protected by the order of the court directing the sale. He was not bound to go behind it. The order was sufficient for him. . He '^has conveyed á. part of the land to Harduty and another part to Perkins, both <}f whom are protected by Crosby’s whnt of knowledge. 3 Ohio, 561, 562; 7 Ohio, 200 ; 1 Johns. Ch. 219.
The remaining point is, as to the power of the administrator to pay the taxes on the real estate of the intestate. This is denied by the complainants, but neither the case cited from 4 Mass. 358» nor 6 Ohio, 238, sustain them. In 4 Mass., it is determined that the administrator is not, as such, entitled to the possession of the decedent’s lands. This is doubtless true. By the common law, ■on the death of the ancestor, the lands descend to the heir, and the power of the administrator over them is entirely derived from the statute.
It can not be doubted, we think, but what the taxes may be -considered as debts against the estate. Such debts the statute -authorizes the administrator to pay. In case of a deficiency of personal assets, he may sell the lands for that purpose. May he not, then, in an emergency such as this case presents, when he ■came into the trust, create a debt against the estate, by loaning money to prevent its sacrifice, and sell the real estate, under an ■order of court, for its discharge? We think he may. The case in 6 Ohio does not aid the complainants. It holds this salutary principle : That the heir is bound to pay the taxes, as between him and the administrator, and if he suffer them to accumulate, and bid in the lands for their discharge, it is only his own method of payment, and that such sale does not protect the lands, in the hands of heirs, against the just demands of creditors.
On the whole case, we unhesitatingly come to the conclusion that the complainants are not entitled to the relief they seek, and that the bill should'be dismissed, with costs.'
Judge Hitchcock, having been of counsel for the respondents* •did not sit in this cause.