## HARDY PHIPPEN *vs.* RICHARD STICKNEY.

An agreement between A. & B. that B. will permit A. to buy a tract of land which is to be sold at auction, and that A. will buy it and convey a certain part thereof to B. at an appraisement to be made by persons named in the agreement, is not, on the face of it, void for illegality.

An agreement by two or more persons, that one of them only will bid at an auction of property, and will become the purchaser for the benefit of them all, is illegal, if it be made for the purpose of preventing competition at the biddings and depressing the price of the property below the fair market value. *Aliter*, if the purpose of the agreement be to enable each of the parties to become a purchaser, when he desires a part of the property offered for sale, and not the whole lot ; or if the agreement be for any other honest and reasonable purpose.

Where one makes a valid promise to convey land to another for the sum at which it shall be appraised by three certain men, it is not necessary that they should be unanimous in their appraisement, in order to bind the promissor to make the conveyance

THIS was an action of debt to recover $ 100 for breach of the following agreement : " Know all men by these presents, that I Richard Stickney, in consideration that Hardy Phippen will permit me to purchase a certain piece of land, to be sold this day, bounded on said Phippen and myself, do hereby agree to purchase the said lot of land, and by this instrument do hereby agree to sell and convey to said Phippen the said piece of land on such terms as we, the said Phippen and Stickney, shall hereafter agree upon, or on such terms as the witnesses to this instrument shall decide to be just and reasonable : Said conveyance to Phippen to be made by said Stickney as soon after the sale to be made this day, as can reasonably and conveniently be made ; it being understood and agreed that the said Stickney will reserve the court or passage way, and the trees on the lot said Stickney agrees to convey to Phippen and his heirs, to himself ; said trees to remain on the land until the fall, or a suitable time to remove them. In default of any part of the condition of this agreement, we bind ourselves, and our heirs respectively, in the sum of one hundred dollars, to be duly paid to the injured party. Salem, May 23d, 1838. In witness whereof we this day fix our hands and seals." (Signed and sealed by both parties, and attested by three subscribing witnesses.)

The parties submitted the case to the court in these terms : " The defendant offers to prove in defence, if competent, that the contract " (above set forth) " was made under the following circumstances ; One Joseph Perkins died seized of a lot of land adjoining the lands of the plaintiff and lands of the defendant. The administrator of the estate of said Perkins advertised said lot of Perkins for sale at public auction, under license from the probate court. The plaintiff and defendant entered into said written agreement. The defendant purchased the land at auction, and under said agreement ; the plaintiff refraining from any bid, on account of said agreement. As soon as the defendant had received his deed from said administrator, the plaintiff demanded of the defendant a settlement according to the terms of said agreement ; but they could not agree, and thereupon the witnesses to said agreement were called together, as by said agreement is provided, and the parties had notice and appeared before the referees, or witnesses, two of whom agreed upon and signed an award, that the defendant should pay to the plaintiff $ 180 for the land described and mentioned in the instrument (above set forth) signed by them. The third referee, in whose handwriting the award appears, was present, but did not agree to it, and refused to sign it. This award, the defendant refused to perform.

" If the plaintiff ought to recover, he is to have judgment for $ 100, and costs, and interest ; otherwise, he is to be nonsuit, and the defendant is to have costs."

The argument was had at the last November term.

*Prince*, for the defendant. The agreement of these parties was void for illegality. *Jones* v. *Caswell*, 3 Johns. Cas. 29. *Doolin* v. *Ward*, 6 Johns. 194. *Wilbur* v. *How*, 8 Johns. 444. *Thompson* v. *Davies*, 13 Johns. 112. *Gulick* v. *Ward*, 5 Halst. 87. Brown on Sales, 585 – 587.

The award of two only of the arbitrators did not bind the parties. *Towne* v. *Jaquith*, 6 Mass. 46.

*Ward*, for the plaintiff.

The chief justice read the opinion of the court, as written by DEWEY, J. The principal question in the present case

is, whether the contract entered into by these parties is invalid in law, as contravening established principles of public policy, and injurious, in its tendency and effect, to the interests of those who may be concerned in sales at auction.

This subject, in another form, came before the court of King's Bench in the case of *Bexwell* v. *Christie*, Cowp. 395, on which occasion Lord Mansfield expressed his opinion strongly against all secret arrangements calculated to mislead and deceive purchasers, or vendors, and requiring the strict observance of good faith and fair dealing, as essential to the validity of such sales. Upon this principle, the court in that case refused to sustain an action by the owner of property sold, against an auctioneer for selling the same to the highest bidder, contrary to his instructions from the owner not to sell below a certain fixed price. Similar views were taken in the case of *Howard* v. *Castle*, 6 T. R. 642, where the owner of an estate, that was offered for sale at auction, employed puffers to bid at the auction ; and this was held to be a fraud upon the bidders, and as such sufficient to avoid the sale. These doctrines, to the extent to which they were carried by Lord Mansfield in *Bexwell* v. *Christie*, and by Lord Kenyon in *Howard* v. *Castle*, have been questioned in the cases of *Conelly* v. *Parsons*, 3 Ves. 625 ; *Smith* v. *Clarke*, 12 Ves. 477 ; and in *Steele* v. *Ellmaker*, 11 S. & R. 86 ; so much so, that Chancellor Kent, in his Commentaries, Vol. II. p. 529, (4th ed.) says, it seems to be the conclusion from the later cases, that the employment of a bidder by the owner would or would not be fraud, according to the circumstances of the case, as they tended to show innocence of intention or fraudulent design — suggesting, however, as his own opinion, that the doctrine of the earlier cases was the better one. Mr. Justice Story, in his Commentaries on Equity Jurisprudence, Vol. I. § 293, declares such agreement, especially in cases where the auction is one directed or required by law, to be void ; being unconscientious and against public policy, and having a tendency injuriously to affect the character and value of sales at auction, and to mislead private confidence. There are some more recent English decisions which seem strongly to

countenance the general doctrine of *Bexley* v. *Christie* and *Howard* v. *Castle* ; as will be seen by a reference to the cases of *Crowder* v. *Austin*, 2 Car. & P. 208 ; *Wheeler* v. *Collier*, 1 Mood. & Malk. 123 ; and *Fuller* v. *Abrahams*, 3 Brod. & Bing. 116. *S. C.* 6 Moore, 316. In the case last cited, it was held that the sale might be avoided, if the purchaser prevails on the persons attending the sale to desist from bidding by reason of suggestions by way of appeal to the sympathy of the company assembled.

In the American courts, there has also been some diversity of views upon this subject. The supreme court of New York have, in several reported cases, held that contracts by which one party stipulated not to bid against another at an auction sale, or an agreement by one to bid for the benefit of himself and the other party, could not be enforced in a court of law. The de-cisions have been usually placed upon two grounds ; 1st. that such a contract was *nudum pactum*, being without consideration ; 2d. that it was against public policy and a fraud on the vendor. *Jones* v. *Caswell*, 3 Johns. Cas. 29. *Doolin* v. *Ward*, 6 Johns. 194. *Wilbur* v. *How*, 8 Johns. 444. *Thompson* v. *Davies*, 13 Johns. 112. The same doctrine, as to the effect of such contracts, was held in *Dudley* v. *Little*, 2 Ham. 505, and in *Piatt* v. *Oliver*, 1 McLean, 295. The case of *Gulick* v. *Ward*, 5 Halst. 87, strongly supports the general doctrine, that such contracts cannot be enforced, as legal and valid contracts.

On the other hand, there are decisions supporting the doc-trine that there may be allowed in auction sales the practice of by-bidding, if it be *bonâ fide*, and for the sole purpose of pre-venting a sacrifice of the property offered for sale. *Wolfe* v. *Luyster*, 1 Hall, 146. *Jenkins* v. *Hogg*, 2 Const. (S. C.) Rep. 821. Chit. Con. (4th Amer. ed.) 238, *note*. In *Smith* v. *Greenlee*, 2 Dev. 126, the court of North Carolina, while they sustain the general doctrine that a sale might be avoided when made to one in behalf of an association of bidders designed to stifle competition, yet concede that this rule would not apply to an association of bidders formed for honest and proper purposes, as in the case of a union of several persons formed on accoun'

of the magnitude of the sale, or where the quantity offered to a single bidder exceeded the amount which individuals might wish to purchase on their own account.

It seems to us, after some consideration of this question, and an examination of the adjudged cases bearing upon it, that we cannot judicially declare that every contract between two or more individuals, in which it may be stipulated that one s to be the purchaser for the joint benefit of himself and another, and tnat the other is not to interfere with his bidding, shall, when attempted to be enforced for the benefit of the associates, be held void as a fraud upon the rights of the vendor and as against public policy, merely because he who seeks to enforce the contract may have been thereby induced to abstain from bidding. Cases may readily be imagined, and indeed are of frequent occurrence in sales of large magnitude, where two or more persons do thus unite, and are thereby enabled to become purchasers, when neither of them could otherwise have participated in the bidding. By such an association as is just supposed, the interest of the vendor, as well as that of the vendees, would be directly advanced.

The extent, to which the doctrine of invalidating such contracts can be safely carried, would rather seem to embrace within the rule all cases of fraudulent acts, and all combinations having for their object to stifle fair competition at the biddings, with the design of becoming the purchasers at a price less than the fair value of the property. Beyond this, the application of the principle contended for may be found productive of mischief and an unwarrantable interference with the course of business in auction sales. We are therefore of opinion, that an agreement between A. and B., that A. will permit B. to become the pur chaser of certain property about to be offered at sale at public auction, and that A. shall participate with B. in the benefits of the purchase, will or will not be fraudulent, as the circumstances of the case show innocence of intention or a fraudulent purpose in making such agreement ; that where such arrangement is made for the purpose and with the view of preventing fair competition, and by reason of want of bidders to depress the

price of the article, offered for sale, below the fair market value, it will be illegal, and may be avoided as between the parties, as a fraud upon the rights of the vendor. But, on the other hand, if the arrangement is entered into for no such fraudulent purpose, but for the mutual convenience of the parties, as with the view of enabling them to become purchasers, each being desirous of purchasing a part of the property offered for sale, and not an entire lot, or induced by any other reasonable and honest purpose, such agreement will be valid and binding.*

In the case before us, upon the facts stated, we do not feel authorized to set aside this agreement as illegal or fraudulent, upon the principles we have stated. Fraud is not to be pre sumed, where the contract is, on the face of it, consistent with honesty of purpose and fair dealing. If the defendant would avail himself of a defence of that character, it must be upon the finding of a jury, or upon a case stated by the parties clearly disclosing such fraudulent purpose. This contract might have been entered into by these parties, for good and justifiable reasons ; and it is not, therefore, to be deemed fraudulent and void upon the face of it.

The only remaining objection is, that the plaintiff is not entitled to recover, because there has been no valid award made, by the three persons agreed upon by the parties, fixing the sum to be paid by the plaintiff to entitle him to a conveyance from the defendant. The objection is, that of the three arbitrators selected by the parties, two only concurred in the award. This would constitute a valid objection to an action on an award founded on a submission at common law, there being no stipulation that a majority should decide. The question arises here, however, under different circumstances ; the plaintiff founding his cause of action on the promise of the defendant to convey to him the land. In a case like the present, if it appears that the plaintiff has done all in his power to procure an award fixing the amount to be paid by him, in pursuance of the terms of the contract, we do not think that the act of any one of the persons thus selected as arbitrators, in refusing to concur with his asso-

---

* S. P. *Smull* v. *Jones*, 1 Watts & Serg. 128.

ciates in fixing the sum to be paid, should operate to divest the rights of the plaintiff arising under this contract. If the sum to be paid by the plaintiff, before he was entitled to the conveyance, could not be adjusted in the manner contemplated by the parties, and this state of things occurred without the fault of the plaintiff, the effect must be, that he must pay for the land such a sum as was reasonable, and such sum as the arbitrators ought to have awarded. The defendant has refused, on his part, to make the conveyance to the plaintiff which he stipulated to make, and has therefore rendered himself liable in damages to the plaintiff.