## Brisbane *vs.* Adams.

An agreement entered into for the purpose of preventing competition at a sale of property under execution or distress for rent is void as against public policy. *Per* SHANKLAND, J.

An agent appointed to "take care" of personal property, and to give his principal notice of the existence of liens upon it, has no authority to make an agreement with a third person to purchase the property on account of his principal at a sale to which it is exposed to satisfy rent under a distress warrant.

BRISBANE brought trover against Adams in the superior court of the city of New-York, to recover the value of a standing press, and two transferring machines used in the business of engraving bank notes. The case was this: In February, 1841, one Durand, then the owner of the property in question, mortgaged it to the plaintiff to secure the payment of the sum of $2750. In March, 1843, the defendant distrained upon the property for rent due from Durand, the mortgagor, and on the sale under the warrant, became the purchaser; but whether he purchased on his own account, or for the plaintiff, was a question of fact contested on the trial and submitted to the jury. The evidence of Mr. Dean tended to show, that before the sale the defendant agreed to purchase in the property for the plaintiff. Dean was an agent of the plaintiff, and as he testified, made the agreement so to purchase with the defendant. In

regard to his authority to make such an agreement, he testified that in 1843, he "was in possession of the property to take care of it for the plaintiff as his agent. He [the plaintiff] told me to take care of the property and give him notice of any lien. He gave me no other instructions." About two weeks after the sale, the amount of the defendant's bid was tendered to him on behalf of the plaintiff and the property demanded. The defendant refused to receive the money or give up the property. There was some evidence tending to show that the sale under the distress warrant was made in pursuance of an arrangement between Durand, the defendant, and the plaintiff's agent, and with an understanding that at the sale there should be no bidding in competition with the defendant.

When the plaintiff had rested, the defendant moved for a nonsuit, which was denied, and the defendant excepted. An exception was also taken to the charge of the judge. The jury found a verdict for the plaintiff, which the supreme court refused to set aside. And after judgment the defendant appealed to this court.

*A. D. Ditmars*, for appellant.

*J. Green*, for the respondent.

SHANKLAND, J. If the arrangement which Dean professes to have made with the defendant, to bid off the property in question for the plaintiff, also included an agreement or understanding that Dean, or any other person, should abstain from bidding at the sale, the whole agreement would be adjudged void, on grounds of public policy; and no action could be sustained to enforce it. (*Wilber* v. *How*, 8 *John.* 444; *Jones* v. *Caswell*, 3 *John. Cas.* 29; *Thompson* v. *Davies*, 13 *John.* 112; *Doolin* v. *Ward*, 6 *id.* 194.)

But the testimony of Dean was not sufficiently explicit on this point, to warrant the court in granting a nonsuit when that motion was made; and although there was sufficient disclosed by him to have required the judge to have submitted the ques-

tion to the jury, if he had been asked to do so, yet, as the defendant failed to make that request, we can not reverse for that cause.

There is one point in the case on which I think the court erred. After the jury came back into court, and one had dissented from the verdict, the court charged them " that it was competent for Dean, under his general authority, as testified to by him, to make the arrangement with Adams, and that if he made such arrangement, Adams was liable to the plaintiff." Under this instruction, the juror assented to the verdict for the plaintiff.

Dean testified that in 1843 he was in possession of the property, *to take care of it for the plaintiff as his agent. " He told me to take good care of the property, and give him notice of any lien; he gave me no other instructions."* Did the above agency authorize Dean to employ the defendant to bid in the property for plaintiff so as to make a binding agreement on the plaintiff to receive the property and pay the bid? It seems to me not. His authority was limited to taking care of the goods and giving notice of liens. A more extended authority was not contemplated by the plaintiff, nor its necessity foreseen. The defendant could not have maintained an action against the present plaintiff, for money paid to his use or at his request, founded on this transaction. There was therefore no mutuality for the defendant's promise, and he is not bound by it. But if Dean had authority, there was not a compliance with the agreement to pay the bid to the defendant, within the time mentioned by Dean. He told the defendant the money was expected from the plaintiff *every day*, and that it would *undoubtedly* be down in a week or ten days; but it was not offered to the defendant until two weeks had elapsed.

It is now said that if Dean had not authority from the plaintiff to bind him to this arrangement with the defendant, still the plaintiff has subsequently affirmed it; and that a subsequent adoption of an act done by one assuming to be an agent, is equal in its effect to a precedent authority.

This legal proposition, is undoubted law ; but no such ground

was taken at the trial; nor were the facts which go to support it, submitted to the jury. The jury were charged as matter of law that Dean had authority to make the arrangement under his general authority, as testified to by him.

For the above reasons, I think the judgment should be reversed, and a new trial ordered by the superior court.

Ordered accordingly.