## Achshah Dunning *et al.*

### *v.*

## William H. Dunning *et al.*

1. In partition—*whether the petition should be sworn to—and herein, within what time the objection must be taken.* In a suit for partition of lands, after answer filed, decree for partition had, commissioners appointed, their report approved, a sale of the land ordered, the yearly value of the dower of the widow assessed, and a sale of the lands made by the Master in Chancery it is too late to object that the petition was not sworn to. If made at the outset, and before answer filed, it might prevail.

2. Appearance—*waives necessity of service of process.* The fact that the defendants were not served with process, is unimportant, if they appeared by attorney.

3. Decree—*need not be signed by the judge.* The judge, rendering a decree in such case, is not required to sign his name to it. The entry of the decree on the record, by the clerk, gives it validity.

4. Practice—*when to object for want of bond for costs.* The objection, that no bond for costs was filed, the plaintiff being non-resident, comes too late after answer filed, and if not made at the proper time, it will be considered as waived.

5. Notice—*on motion to set aside proceedings in partition.* On a motion to set aside such proceedings, it is indispensable, that the purchaser at the sale in partition, should have notice thereof.

Writ of Error to the Circuit Court of Iroquois county; the Hon. Charles R. Starr, Judge, presiding.

This was a motion in the Circuit Court of Iroquois county, at the June term, 1863, to set aside the sale of certain lands made by order of that court, in a suit for partition.

The reasons assigned in support of the motion were:

1. Because the petition was not sworn to before the same was filed.

2. Because there never was any process issued or served on the defendants.

3. Because their appearance was never entered in said cause by their authority.

4. Because the decree of the court that purported to have been made by said court never was signed by any one purporting to be acting as the judge of said court.

5. Because the complainants in said petition are non-residents of the State of Illinois, and that no bond was filed for costs, as required by law.

6. Because the petitioners have not all sued in the proper title or style.

7. Because the court had no jurisdiction over the persons of these defendants.

8. Because the attorneys that entered the appearance of the said defendants had no right or authority to do so.

Affidavits and counter affidavits were read on the motion, and it was denied by the court.

The following affidavits were read in support of the motion, at the November term, 1863:

*George R. Dunning* says he is one of the sons and heirs at law of deceased; that William H. Dunning and others, filed this petition for partition for the division of lands described in petition; and that this affiant was made a defendant in the cause. He admits that A. B. Roff and Kinney filed answers for defendants and waived service of process; and that Kinney and Roff had no right or authority to enter their appearance or waive service of process from this affiant or any of the defendants in the cause; that they never employed him or either of them; and that the lands are worth $25 per acre.

*Margaret King* says that she is a daughter of deceased, and one of the defendants in the cause; that Kinney and Roff, attorneys, did file answers to the petition for defendants at the June term, A. D. 1863; but denies that she or any of the defendants, to her knowledge, ever employed or authorized Roff or Kinney to enter her appearance and to waive service of process on this affiant or either of the defendants.

*Oren King* says that he is the husband of Margaret King, late Margaret Dunning, and that he is one of the defendants; that the lands are worth $25 per acre; and that Kinney and Roff had no authority to enter his appearance for either of the defendants; and that he, or either of them was never employed in the cause. This affiant says that in conversation with Roff, he (Roff,) stated that he entered his appearance through mistake.

*A. G. Willard* says that he is well acquainted with the lands, and believes the same to be worth $25 per acre; and that there are about four hundred and sixy acres of land.

*Samuel Warrich* says that he is well acquainted with the farm; that he believes the lands to be worth $25 per acre; that there are about four hundred and sixty acres of land.

On the 19th day of February, 1864, there were filed in support of the motion, the affidavits of *Walter Noble, Amos O. Whiteman, John C. Noble* and *George P. Ketchum,* going to show that the lands named in the petition were worth $25 per acre, and that the same could have been divided without any damage to the farm, or to the injury of the heirs.

At the March term, 1864, the affidavits on the part of the plaintiffs in the motion, of Achshah Dunning, was read, denying she employed Roff and Kinney to enter her appearance, or the appearance of any of the defendants, and the waivers of process on the part of the defendants.

*William H. Dunning* stated in substance, that a few days previous to the June term, 1863, of the Circuit Court, he came from his residence in Wisconsin, to Middleport, Iroquois county, to take some proceedings for himself, and the complainants for whom he was acting in the premises, for the partition and assignment of dower to Achshah Dunning the widow, in what was known in that county, as the " Dunning Farm "—that a few days before the sitting of the court at the June term, he called on the widow and Margaret King, two of the defendants in the partition suit, to make some arrangements about a partition and the assignment of dower for the widow in that farm; that he told them, that he wished

it done at the coming June term; that they both objected to taking any steps to have the dower set off, alleging it would damage the sale. The widow remarked, that she was old and did not wish to live on the farm, and would not if the farm was given to her, but they both stated they were willing, and anxious to have the farm sold, provided the widow could have in money, the portion to which she was entitled, in lieu of dower. We then proposed to them to make a mutual arrangement to get a sale of the farm, and if it could be effected, the widow to have an annuity or money in lieu of her dower, and to expedite the business and save costs, he proposed to proceed at once and get a decree at the coming June term. This they all agreed to, and agreed also, to employ attorneys and waive all process and come into court the next June term, and obtain a decree as proposed, provided that George R. Dunning, a son of Achshah, and brother of Margaret, and one of the defendants, was willing, and would assent to the proposed proceeding; and he further said that the next day, or the next day but one, he went to see Geo. R. Dunning and Oren King, the husband of Margaret, also one of the defendants whom he did see, and each expressed himself willing and was desirous that matters should be mutually arranged and proceedings had as the said Achshah Dunning, Margaret King, and he, had before agreed. In pursuance of such arrangement, George R. Dunning proceeded at once, with affiant to take counsel, and George did counsel with Asa B. Roff and George B. Joiner, and said he had employed Asa B. Roff to appear for himself, for Achshah Dunning and for Margaret King; and further said they would go on at the June term of court, as proposed and agreed upon; he further said that a few days after, he called on these parties, and told each of them it would be necessary for them all to go to Middleport and appear, or give their consent to the arrangement which they had made, to which Achshah and George agreed, and they both went to Middleport with him, but Margaret said she could not well go, but would agree to anything Achshah and George

should do in the business; that George also, at that time, when at Middleport, informed him, that he had employed Asa B. Roff, attorney for himself and Achshah, and Margaret; he further said the suit could now be got up and the parties could go ahead with it, whereupon he called upon Roff, who also said he was employed as attorney in the cause; and he further said that Roff did appear in the cause, as also Chester Kinney on the part of the defendants with Roff, and he further said that George R. Dunning and Oren King, both appeared before the jury in the cause, of which C. F. McNeil, Master in Chancery had charge, by order of the court, when evidence was brought and witnesses sworn as to the amount of annuity which the widow should receive in lieu of her dower, at which time Roff and Kinney were present, and George, and Oren King took an active part to have the amount of the annuity settled to correspond with their wishes and feelings. He also said that George R. Dunning and Oren King, were both present in court when the decree in the case was being settled, and that George particularly interested himself in the decree, which was finally settled to suit him; and he further says that George, and Oren King were both present at the public sale of the farm which was sold under the decree of the court, that they both interested themselves at the sale to get bidders, and to have the farm sold at a good price, and that neither of them made objections to the sale; he also says further, that he had a conversation with Margaret King the day before the farm was sold by C. F. McNeil, Esq., commissioner, who made no objections to the sale, but she stated that she had understood Dr. Fowler and Charles Sherman had intended to bid on the farm; that they owned land on each side of it, and if they bought it they would divide it to suit their convenience; he further said he was at the house of Oren King the day after the sale of the farm and heard him remark to his wife, Margaret King, that Mr. Wright, the purchaser of the farm, wished to negotiate, and buy up the back payments at 10

per cent. discount, and Margaret said she would not nego-
tiate, but that she preferred that the payments should be se-
cured by a mortgage on the farm, and have her interest; and
he further said that Dr. Fowler and Charles Sherman both
bid on the farm at the public sale, and also, that at least one
other person, bid on the farm at the sale to his knowledge,
and also that others bid as he was informed and believes.

*A. B. Roff* stated that he, together with one Kinney, acted
as the attorneys for defendants at the June term, that Oren
King, George R. Dunning and Achshah Dunning, spoke to,
and counselled with him, and he believed from the conversa-
tion, that he was employed as the attorney in the cause for
all of the defendants, and he, together with Kinney, entered
the appearance of all the defendants; that he employed
Kinney for defendants.

*Juliet Boutwell* said she resides in the State of Wisconsin;
that she was acquainted with the defendants; that she came
down on a visit in November, 1863, to the residence of de-
fendants; she heard each of them say that they became wil-
ling parties to the suit, for the purpose of having the lands
sold; she further said that George R. Dunning said, that he
intended to bid $18 per acre at the sale.

*Robert Carr* said he had been well acquainted with the farm
for twenty years; that $15 per acre, with the annuity of $225,
was a good price for it; that Mrs. Dunning is a healthy, ac-
tive woman; he, with George Pineo, went on the premises
for the purpose of setting off dower for the widow; and at
that time the widow stated that she did not want her dower
set off, but would rather sell the whole place, as it would
injure the sale of the premises; that she would rather have
a money annuity in lieu of dower.

*George Pineo* said that he, with Robert Carr and Micajah
Stanley, were appointed by the court to examine the farm,
and set off dower to the widow; that he and Carr went on
the premises during the June term of the court, 1863, and
informed the widow of their purpose there, and she told them

that she did not wish her dower set off but preferred it in money, or annuity, in lieu of dower. He heard Dunning and King say after the decree, that they were well satisfied with the proceeding and with their attorneys, Roff and Kinney; and he was well acquainted with the lands, and that $15 per acre was a fair price, with the yearly annuity of $225 to the widow.

*C. F. McNeal* stated that he was present at the trial of the cause, and had charge of the jury that found the yearly annuity for the widow in lieu of dower; that Geo. R. Dunning and Oren King, two of the defendants, were present and consulted with attorneys; that he was appointed by the court, commissioner to sell the lands; that he gave notice of sale four weeks in a newspaper of the county; that he sold the lands on the 10th of November, 1863, at 2 o'clock P. M.; all of the lands were bid off by George S. Wright—subject to widow's annuity of $225—at $15 per acre; that Geo. R. Dunning and King, had personal notice from him of the time of sale, and were both present at the sale; that, under all circumstances, the lands sold for all they were worth; he said he wrote a letter to King and Geo. R. Dunning, informing them as to the time of sale, and also consulting them as to the sale.

*George S. Wright* says that he purchased the lands described, on or about the 11th day of November, 1863, for $15 per acre, of said C. F. McNeill, commissioner, subject to life annuity of widow, of $225; that Geo. R. Dunning and King were present at sale; he also called upon them to pay them the deferred payments, but they preferrred to let them stañd according to conditions of sale; this was the next day after the sale; he also had a conversation with widow; she expressed herself well satisfied with sale, and the amount of annuity.

*George B. Joiners* says that he was at the residence of widow between the June term of said court, 1863, and the sale; and, in a conversation with widow, she stated that she had beat

him in the trial; that she had hired a lawyer, and she appeared to be satisfied; that she did not want the farm divided; that said lands are not worth more than $15 per acre.

*Chester Kinney* says that he was employed by A. B. Roff, Esq.; that by direction of Roff he drew up said answer on or about the 16th day of June, 1863; that he was informed by Roff, that he (Roff,) was employed in said cause; that Roff desired him to assist, and thereupon he filed said answer and waived service of process; that before filing said answer, he submitted it to Fletcher, attorney for petitioners, and Roff, attorney for defendants. They stated that it was correct; and he met King and Geo. R. Dunning in court-room, and informed them as to the nature of said answer, and they, as attorneys, followed the instructions of said King and Dunning.

*Charles Sherman* says that he is acquainted with said farm, and it is not worth over $15 per acre with annuity of $225 per year for widow.

*Isabella Crosier* says that she resided in family of Oren King on last of August, 1863, and resided with him, about nine weeks, and she is well acquainted with widow and Geo. R. Dunning; that widow called frequently at said King's; and that she heard, in conversation between widow and Mrs. King, that she (widow) was desirous of having farm sold without any division; that W. H. Dunning wanted to divide the lands, but they had beat him, and that it was to be sold all together; that she wanted money for her share.

*Philander Morgan* says that he is well acquainted with said farm, and has been since 1859 or 60; that $15 per acre is all that the farm is worth, subject to said annuity; that Geo. R. Dunning admitted to him that Kinney and Roff appeared for them (defendants,) and that the suit was then disposed of, and were all satisfied with what they done; that the said Kinney was a good lawyer.

*Michael Hoyle* says he is acquainted with said farm; that it is not worth over $15 per acre, with annuity.

*W. Patterson* says that he is acquainted with said farm, and that it sold for all that it was worth.

*Abram Congenough* says that he is acquainted with said farm, and that it is not worth over $15 per acre.

It was admitted by the judge that he did not sign the record of the June term of said court, 1863, until after defendants filed their motion to set sale aside.

The case is brought here by writ of error, and the same reasons urged for a reversal of judgment as were assigned in support of the motion.

Mr. JOHN CLARK argued for plaintiffs in error.

He referred, upon the point of appearance by an attorney, to the case of *Gardner* v. *Hall*, 29 Ill., 277; and *Frazier* v. *Rexor*, 23 Ib., 88.

As to the appointment of the commissioner, he referred to section 8, of the Partition act, Scates' Comp., 161, and also to the ninth section of the same act.

As to the report of the commissioner, he cited the same section nine.

He objected, that the oath of the commissioners and their report, were on separate pieces of paper and detached, and referred to the case of *Driggs* v. *Dickinson et al.*, 2 Scam., 437. He also objected, that the parties interested, had not, knowingly, a day in court, and cited *Lyon* v. *Britain*, 2 Gilm., 629; *Thomson* v. *Emmert*, 15 Ill., 415; *The People etc.* v. *Sanborn*, 1 Scam., 123.

In his objection to the report and order of sale, he cited *Tibbs* v. *Allen*, 27 Ill., 119, and as to the omission of the judge to sign the order, he referred to *Klcmm* v. *Dewes*, 28 Ib., 318.

Mr. GEORGE B. JOINER and Mr. JAMES FLETCHER argued on the part of the defendants in error, and in reply, contended that the appearance by attorney, and filing answers, was a sufficient appearance, citing 6 Johns. R., 302; 7 Iowa, 320, and 30 Verm., 285. They also contended, that the whole

proceedings were amicable, and that setting them aside, at this late day, would work great injury to the purchasers, who purchased ignorant of any objections.

Mr. JUSTICE BREESE delivered the opinion of the court:

This was a motion in the Circuit Court of Iroquois county, to set aside a sale on partition, and all the orders made in the cause.

The suit was for the partition of the land of Eben Dunning, and filed by a portion of his heirs at law against the widow and the other heirs at law. The defendants duly appeared and filed their answers to the petition, and such proceedings were thereupon had, that the court decreed a partition of the lands and appointed commissioners for that purpose, with directions to set off the widow's dower in the lands. At the same term the commissioners reported the land could not be divided without prejudice to the owners, whereupon an order was made for a sale of the land and a jury was empannelled to enquire of the yearly value of the widow's dower, and to allot the same to her, instead of a portion of the land. The jury assessed the yearly value of the dower at two hundred and twenty-five dollars. A sale was made by the Master in Chancery of the land, subject to this allotment to the widow, which was approved by the court.

A motion was made to set aside all the proceedings, which the court denied.

Many reasons were assigned as grounds of the motion, all which, it is not necessary to notice. The one most important is the first; that the petition was not sworn to as the statute requires. This objection would have prevailed, doubtless, if made at the outset, and before answer filed. After a regular appearance by attorney, answer filed, decree had, and a sale of the premises, and the report thereof approved, this objection comes too late. It is, at most, but a dilatory motion, and must be made in apt time, which is at the earliest moment.

As to the second point, process is unnecessary in any case, where the party voluntarily appears and pleads. Process could do no more than compel appearance, and the purpose is answered if the party comes voluntarily into court. But it is said, the attorneys who appeared for the defendants, and put in the answer to the petition, had no such authority. On this point there are several affidavits, and the weight of testimony contained in them, greatly preponderates in favor of the right of the attorneys to enter an appearance and file an answer. It seemed to be an amicable proceeding between all the parties interested. This disposes of the third objection. As to the fourth, there is no law with which we are familiar, requiring the presiding judge of a Circuit Court to sign a decree which he directs the clerk to enter. The entry of the decree on the record gives it its validity.

As to the fifth objection that the plaintiff was a non-resident and filed no cost bond, it comes too late, after answering to the merits. It is a dilatory motion, and if not interposed at the proper time, will be considered as waived. The objection cannot be made after answer or plea filed. *Trustees of Schools* v. *Walters,* 12 Ill., 154.

It is unnecessary to pass upon the other points in detail, but we will come to the eleventh, which seems to present the *gist* of the controversy. It is this. "Because the lands were sold for one-half their value." None of the affidavits show that there was any unfairness at the sale, It is admitted by all, that the whole proceeding was regular, and the sale had in the presence of two of the defendants and their attorneys, and no objections made. The evidence is quite strong, that with the yearly incumbrance of two hundred and twenty-five dollars on the land, in favor of the widow, fifteen dollars per acre was a full price for the land.

But an insuperable objection to allowing the motion, is, that the purchaser of the land had no notice of the motion. He was a party in interest and entitled to notice. Nor could the court, on the motion to set aside the sale, look into any

irregularities preceding the sale. There being, then, a ratification by the defendants of the acts of the attorneys, Roff and Kinney, if not an implied original authority to enter their appearance, and the court having thus jurisdiction of the defendants, we do not feel authorized on this motion, to go back of the decree of sale.

On the merits of the controversy, the whole case shows that the proceedings for partition and for an allowance to the widow, were of that amicable character, at the start, families often enter into, but which sometimes terminate, as this has done, in an expensive law suit.

The judgment, on the motion, must be affirmed.

*Judgment affirmed.*