People of State of Illinois, Plaintiff-Appellee, v. Minnie E. Smith, Robert W. Simpson, Charles G. Simpson, and Genevieve Simpson, Defendants.
On Appeal of Harold Harris, Appellant.

Gen. No. 10,662.

Opinion filed April 20, 1953. Released for publication May 12, 1953.

AARON SOBLE, of Chicago, for appellant.

HAROLD J. CLARK, of Chicago, and WALTER M. GIVLER, ROBERT C. NELSON, State's Attorney of Lake County, and WILBUR R. BRAZELL, Assistant State's Attorney, all of Waukegan, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

This cause is a dispute between a successful bidder at a tax foreclosure sale and appellant, Harold Harris, who seeks to supplant him in that role. The Supreme Court so stated in holding that the State, as a party, is not interested therein nor does the case relate to the revenue so as to give the Supreme Court jurisdiction on direct appeal. The cause, therefore, was transferred to this court (*People v. Smith*, 413 Ill. 382).

The instant complaint was filed on January 22, 1952, by the People of the State of Illinois against Minnie E. Smith, Robert W. Simpson, Charles G. Simpson, Genevieve Simpson, and others and sought to foreclose the lien of the general taxes for the years 1934 to 1950, inclusive, and so far as this appeal is concerned involved Tracts designated as A, B, and C of Parcel 36. It also involved other tracts of real estate and a number of persons not interested in this appeal. The cause proceeded to a decree of foreclosure and sale entered on March 4, 1952, which decree fixed the day for the sale of the property in question for March 25, 1952. The complaint alleged and the decree found that the defendants Robert Simpson, Charles George Simpson, and Genevieve Simpson hold the record title to said real estate as tenants in common and that said real estate had been forfeited for nonpayment of taxes and that the total amount of taxes, interest, penalties, and costs for which said real estate was forfeited were on Parcel A, $2,765.46; on Parcel B, $8,356.73; and on Parcel C, $740.32.

At 9:30 a. m. on the day fixed for the sale, March 25, 1952, and prior to the time set for the sale, an order was entered by the court, on motion of the State's Attorney, dismissing the complaint and vacating and setting aside the decree of sale as to said Tracts A, B, and C of Parcel 36. The County Treasurer, however, proceeded as ordered by the decree of sale at the hour fixed therefor (10:00 o'clock, a. m.) with the sale as directed by the decree, and at the sale Harold J. Clark bid the sum of $1,355.88 for Parcel A and $359.83 for Parcel C, which sums were the amounts due for delinquent taxes without regard to interest or penalties. Parcel B was not sold.

At 1:30 o'clock on the afternoon of March 25, 1952, the day of the sale, the circuit court entered, on motion of the State's Attorney, an order which provided: "that

129

the complaint and decree of sale heretofore entered herein and said cause be, and the same is, hereby reinstated as to said Parcels A and C and said order entered herein on March 25, 1952, be and the same is hereby decreed to be and remain in full force and effect as to said Parcel B." The County Treasurer filed his report of sale promptly, and an order approving the sale was entered on March 28, 1952.

The appellant, Harold Harris, was a prospective bidder at this tax foreclosure sale. On April 25th he filed his verified petition, pursuant to leave of court, praying for an order (1) to vacate the order of March 28, 1952, approving the report of sale; (2) to vacate the order entered at 1:30 o'clock on the afternoon of March 25, 1952; (3) directing the County Treasurer to cause a new sale to be held; and (4) requiring the State's Attorney to amend the complaint and make proper parties defendant so that good title can be made on all Tracts of this Parcel 36. An answer to this petition was filed by Robert W. Simpson, Charles G. Simpson, and Genevieve Simpson, and upon a hearing the motion was denied and Harold Harris, the petitioner, appeals.

In his petition to vacate, appellant alleged that he was and is interested as a bidder at the sale of the various items of real estate involved in this proceeding and especially in the several Tracts of Parcel 36 as above set forth; that on March 24, 1952, being the day previous to the date fixed for this sale, appellant's attorney was informed by the Assistant State's Attorney in charge of foreclosures that Tracts A, B, and C in Parcel 36 would not be sold as advertised but that they would be withdrawn from the sale so that the complaint could be amended to include necessary information concerning the appointment of a conservator for Charles G. Simpson, an incompetent, who is one of the defendants; that at 9:30 a. m. on March 25, 1952,

an order was entered vacating the decree of sale as to said Parcels; that notwithstanding said order, the County Treasurer proceeded with the sale and received and accepted the bids of Harold J. Clark for Tract A in the sum of $1,355.88 and for Tract C in the sum of $359.83 and received no bid on Tract B; that appellant was present at the sale and voiced his objection to the County Treasurer's sale of the above Parcels, but the County Treasurer proceeded in spite of said objections; that appellant was then and still is prepared to bid a higher amount for said Tracts A and C in Parcel 36 than the amount theretofore bid, and that he is prepared to offer for Tract A the sum of $1,700 and for Tract C the sum of $500, provided a proper sale can be made within six months.

The People filed no answer or other pleading to appellant's motion but Robert W. Simpson, Charles G. Simpson, and Genevieve Simpson answered denying most of the material allegations of the petition to vacate and denied that appellant was entitled to any relief. As affirmative matters, the answer alleged that appellant has no right to appear in this proceeding for the reason that he does not represent any legal or equitable interest in the title or have any interest in the property and having been present at the sale and not having bid at the same, he is now not entitled to be heard.

Upon the hearing of appellant's petition to vacate, it appeared that appellant is an attorney at law and is an office associate of Meyer Field of Chicago; that Meyer Field owns a farm directly across the road from the premises here in question and had been negotiating with the Simpsons for its purchase and was acquainted with the delinquent tax situation; that he requested the State's Attorney to institute foreclosure proceedings and made a guarantee of a minimum bid in accordance with the usual practice; that during the pendency

of the tax foreclosure proceedings, Richard S. Finn, an attorney who represented Meyer Field in this matter, learned that one of the defendant's was an incompetent and he so informed the State's Attorney and his client, Meyer Field. In view of this situation, Mr. Field informed Mr. Finn that he would be unable to guarantee a minimum bid, and Mr. Finn so informed the State's Attorney. The day before the sale the Assistant State's Attorney told Mr. Finn that he would vacate the decree as to these Parcels, and Finn thereupon notified his client that the sale would not take place as to the land in which he was interested.

It also appeared upon the hearing that appellant was in Waukegan, the place of the sale, on March 25, the day of the sale, and attended the sale. When the County Treasurer started to read the description of the property to be sold, Mr. Finn interrupted him and requested that the sale not be made as to the parcels in which his client was interested. The Treasurer, however, proceeded to sell, and Tracts A and C of Parcel 36 were sold to Harold J. Clark. Appellant testified that he was present at the sale but was not prepared to bid that morning because he left Chicago with the understanding that the property would not be offered for sale, and he further testified that he would not now bid if the property were ordered re-sold with the defect in the title outstanding and was not willing to guarantee a bid with such defect of title appearing on the face of the proceedings but was ready to guarantee a minimum bid if the defect were corrected. The Assistant State's Attorney testified and denied that he had advised Mr. Finn that the sale would not be held on March 25th.

██ ██ The first question which arises is what was the effect of the order entered by the court at 9:30 o'clock on the morning of the sale? By this order, the decree for sale was vacated, and if that order had

become effective at the time of the sale, then there was no order of sale, and the sale would have been held without any order of court and, therefore, void. The record shows that the order vacating the sale had been signed by the chancellor but had not been entered of record or enrolled by the clerk. In *Dunning v. Dunning,* 37 Ill. 306, at p. 317, it is said: "There is no law with which we are familiar, requiring the presiding judge of a circuit court to sign a decree which he directs the clerk to enter. The entry of the decree on the record gives it its validity." In *Horn v. Horn,* 234 Ill. 268, at p. 274, it is said: "A decree is not final but is subject to change or modification until it is approved and filed for record." In *Freeport Motor Casualty Company v. Tharp,* 406 Ill. 295, at pp. 298-9, the court said: "Under our practice there is a distinction between a judgment at law and a decree in chancery. In chancery the whole matter is completely under the control of the chancellor until the final decree has been filed or recorded. Until that time, he may alter, amend, change or even disregard all he has said in his minutes; he may reverse his announcement or may order a rehearing, on his own motion, at any time before he has passed the decree and it has been filed for record, or it has been spread upon the record. After this is done, the whole matter is beyond his control. Then, and not until then, it is the decree of the court and is *res judicata.* (*Hughs v. Washington,* 65 Ill. 245.) In a proper sense there is no filing of a decree any more than there would be a filing of the judgment, and the draft made for the guidance of the clerk is not the decree of the court. *Horn v. Horn,* 234 Ill. 268." Under the authorities, the order entered at 9:30 o'clock on the morning of March 25th withdrawing the real estate from sale did not become effective before the sale and that order was completely nullified by the second order of 1:30 o'clock on the afternoon of the same day which vacated

the earlier order and left the provisions of the decree of March 4, 1952, under which the County Treasurer advertised and sold the property, in full force and effect.

██ Appellant was not an unsuccessful bidder at this sale. He was present but did not bid. He is at most a prospective bidder in the event a re-sale is ordered. The chancellor permitted him to intervene and file his petition to vacate the order approving the sale. Upon the hearing he testified that in the event the order approving the sale was vacated he would be unwilling to guarantee a higher bid than the one for which the property sold if the present alleged defect in the title remained uncorrected. His statement that he would make a higher bid under certain circumstances was conditional. He did not bring any money into court or offer to make an advance bid or give any guaranty that there would be no loss on a re-sale. (*Quigley v. Breckenridge,* 180 Ill. 627.) In *Barling v. Peters,* 134 Ill. 606, it was said (p. 620) : "Courts will not refuse to confirm a judicial sale or order a re-sale, on the motion of an interested party, merely to protect him against the result of his own negligence, where he is under no disability to protect his own rights at such sale."

██ Under the circumstances shown by this record the chancellor did not err in denying appellant's motion, and the order appealed from is therefore affirmed.

*Order affirmed.*