ENOS AYRES, Appellant, v. MORITZ F. BAUMGARTEN, Appellee ; and EDWARD WRIGHT, Guardian, &c., v. PALLAS PHELPS, next friend, &c.

### APPEAL FROM COOK.

The deed of a guardian, without a confirmatory order of the court, does not pass title.

The discretion to be used by the court in confirming sales of guardians, must conform to established principles.

The English practice of opening biddings at such sales, is not adopted in this State.

As a general principle, mere inadequacy of price is not a sufficient cause for setting aside a sale.

THIS cause was heard before MORRIS, Judge, at May term, 1854, of Cook Circuit Court.

G. GOODRICH and C. B. HOSMER, for appellants.

PHELPS and McGIRR, for appellees.

TREAT, C. J. At the November term, 1853, of the Cook circuit court, Edward Wright, guardian of M. F. Baumgarten, obtained an order for the sale of an undivided third part of two acres of land in the city of Chicago, for the support and education of the ward ; the sale to be made at the court-house on the 6th of February, 1854, at ten o'clock, A. M., twenty days' notice thereof being previously given in a daily newspaper of the city ; one third of the purchase-money to be paid at the time of sale, and the balance in one and two years, with interest ; the guardian to convey the premises to the purchaser, and take from him a mortgage on the same to secure the deferred payments.

At the March term, 1854, the guardian made return of his proceedings under the order, showing the giving of the notice, the sale of the premises to Enos Ayers for $4,700, the conveyance of the same to Ayers, the receipt of one third of the purchase-money, and the taking of the notes of Ayers for the remaining two thirds, and a mortgage on the premises to secure their payment. On motion of the guardian, a rule was thereupon entered, requiring all parties interested to show cause by a given day why the report should not be confirmed.

On the 5th of April, 1854, P. Phelps obtained leave of the

court to file a petition as the next friend of the ward, praying that the sale should not be confirmed. The petition stated, in substance, that the time and place of the sale was not generally known, and that the sale was hastily and collusively made; that the interest of the ward in the two acres was worth $10,-000, and would bring that sum on a resale. The motion of the guardian to confirm the report was heard on the 5th of May, 1854, on the following affidavits.

P. Phelps swore, that he heard Ayers say that he had been offered double the price he paid at the sale, and refused it because he considered the property worth more. H. Maher swore, that he owned an undivided interest in the two acres, and the share of the ward was on the day of sale worth $9,805; he would have bid that sum for it if he had known of the sale, and he would give that amount if a new sale was ordered. B. Wilder swore, that the interest of the ward was worth on the day of sale $10,000, and it would bring that amount on a resale. T. J. S. Flint swore, that he owned property in the vicinity of the two acres, and the share of the ward was worth on the day of sale more than $10,000, and he would be willing to give that sum for it.

W. H. Stickney stated, that he had been engaged in the purchase and sale of real estate in Chicago for several years, and knew the property in question; it was not worth more than $6,000 per acre, and the share of the ward sold for its full value. W. H. Adams stated, that he had been extensively engaged in purchasing and selling real estate in Chicago for the last two years, and was well acquainted with the property in question; it was worth about $5,000 per acre, and the interest of the ward brought more than its fair market value. J. H. Rees and S. H. Kerfoot stated, that they had been for a long time exclusively engaged in the buying and selling of real estate in Chicago, and were well acquainted with this property; the share of the ward sold for its full market value, and much higher than property usually brings at guardian's sales. W. H. Whitney stated, that he had been for two years engaged in buying and selling real estate in Chicago, and well knew this property; the interest of the ward was sold for its full market value. J. Burr stated, that he had been engaged in purchasing and selling real estate in Chicago, for five years, and was well acquainted with this property; the share of the ward was sold for its full value. H. A. Clark and V. C. Turner stated, that they had been extensively engaged in the purchase and sale of real estate in Chicago for seven years, and knew the property in question; the share

of the ward brought its full value, and much more than they would have given for it.

E. C. Larned testified that he attended the sale with the intention of purchasing the property; there was active competition among bidders, and the whole proceedings were conducted with entire fairness; before the sale he made inquiries as to the value of the ward's interest, and came to the conclusion that it was not worth more than $3,500. C. B. Hosmer testified, that he was the solicitor of the guardian, and was present at the sale; the sale was fairly conducted, and there was an active competition among bidders; the guardian and witness both before and at the sale, used their best efforts to obtain the highest price for the property. J. G. Hamilton testified, that P. Phelps endeavored to procure from Ayers a ratification of a lease of the property, which H. Maher had previously obtained from other parties; failing in that, he offered on behalf of Maher to pay Ayers $600 for his bargain, and threatened, if he did not accept it, to oppose the confirmation of the guardian's report.

On this state of case, the court refused to confirm the report of the guardian; and the guardian and purchaser each prosecuted an appeal to this court. The appeals present the same question, and will be considered as one case.

According to our statute, a purchaser of real estate at a guardian's sale acquires no title, unless the sale is reported by the guardian, and confirmed by the court. The deed of the guardian, without this confirmatory order of the court, does not pass the title. Young v. Keogh, 11 Ill. 642. The result of this case, therefore, is, if the decision of the circuit judge is permitted to stand, that the purchase of Ayers will be unavailing, and the property of the ward must be again exposed to sale. Courts are vested with a sound discretion in this class of cases. It must, however, be exercised according to established principles. A decision approving or disapproving a guardian's report may be assigned for error. The question in the case is, whether the court erred in refusing to confirm the report. That due notice was given of the sale, that the sale was made at the time and place and on the terms prescribed in the order, and that the purchaser performed the conditions of the sale, are uncontroverted facts. The allegation that the sale was hastily and collusively made, is wholly unsupported by the evidence. There is nothing in the case to show the least fraud or negligence on the part of the guardian. On the contrary, it clearly appears that the sale was regularly and fairly conducted, and with due regard to the interests of the ward. The sale having been

made in good faith, and the terms of the order having been complied with, the purchaser is entitled to hold the property, unless the inadequacy of the price requires that the sale be set aside. The English practice is to open the biddings at a master's sale before confirmation of the report, on the offer of a reasonable advance upon the sum bid at the sale, and the payment of the expenses of the purchaser; and the party applying to have the biddings opened is required to deposit the amount of such advance and expenses. Upton *v.* Feners, 2 Vesey, 700; Anonymous, 6 Ib. 513; Macclesfield *v.* Blake, 8 Ib. 214. But this practice of the English courts in opening biddings has not been adopted in this country. Williamson *v.* Dale, 3 Johns. C. R. 290; Duncan *v.* Dodd, 2 Paige, 99. Even if the English practice prevailed here, this case would not fall within it. No money was brought into court; nor was any binding offer made of an advance upon the price. There was, therefore, no certain assurance that the property would bring any thing more on a resale. As a general principle, mere inadequacy of price is not a sufficient cause for setting aside a sale. Livingston *v.* Byrne, 11 Johns. 556; Tripp *v.* Cook, 26 Wend. 143; Williamson *v.* Dale, 3 Johns. C. R. 290. It is said by the chancellor in the latter case: " I do not lay any stress upon the alleged inadequacy of the auction price. Such a ground alone, unattended with other circumstances, is not sufficient." But if mere inadequacy of price was a good ground to avoid a guardian's sale, this sale would have to be sustained. It does not satisfactorily appear that the property of the ward was sold for less than its value. Some of the witnesses are, indeed, of that opinion, but much the greater number state that the property brought its full value. Considering the number of witnesses, and their means of forming correct conclusions, the weight of evidence manifestly is, that the purchaser gave a fair price for the property. This decided preponderance of the testimony would require a confirmation of the sale. In our opinion, Ayers is entitled to the benefit of his purchase, and the report of the guardian ought to be confirmed.

The decree of the circuit court must be reversed, and the cause will be remanded, with directions to that court to enter a decree confirming the report of the guardian.

*Decree reversed.*