## JOHN COMSTOCK *et al.*

### *v.*

## CHARLES K. PURPLE *et al.*

1. PARTIES—*in suits in partition—application by the purchaser of lands under decree in suit for partition—to be made a party to subsequent proceedings had to set aside the sale.* Where, in a suit for partition of lands, a decree for partition was rendered and a sale made by the master, and subsequently, proceedings were instituted to set aside the sale, and an order to that effect granted, and this, without any notice thereof to the purchaser at the sale ; and such purchaser, thereafter, and after an appeal had been taken from such order, but not perfected, by one of the parties to the record, made application to be made a party defen· dant to the proceedings, which the court granted, but decreeing, also, that the

decree setting aside the sale should be binding upon him, the same as if he had formerly been made a party thereto, and leave was granted him to appeal therefrom : *Held,* that the proceedings allowing such purchaser to be made a party defendant, at that stage of the cause, although irregular, were nevertheless proper and just, in order that he might suffer no injury from proceedings of which he had had no notice, and against which he had no opportunity to defend.

2. APPEALS—*of separate appeals.* And in such case, the appeal taken by the purchaser was entirely independent of that taken by the other defendant, and the abandonment by the latter of his appeal, can not, in the least, affect the appeal taken by the former. They have no connection whatever.

3. NOTICE—*to the purchaser—on motion to set aside sale of lands in partition.* The purchaser at the sale of lands, made under a decree in partition, must have notice of the motion to set aside such sale.

4. JUDICIAL SALES—*inadequacy of price.* This court has repeatedly said, that where lands are sold for an inadequate price, that, of itself, is not sufficient cause to set aside the sale, unless it is so grossly inadequate as to establish fraud.

5. Where, on a sale of lands made by the master in chancery, under a decree in partition, the order of the court directing such sale, was in every particular faithfully complied with, and all the proceedings were conducted with the utmost fairness, such sale will not be disturbed, even though the lands were worth one hundred per cent. more than the sum actually bid for them, and for which they were sold.

6. At judicial sales, property is not expected to sell for its full value, and mere inadequacy of price will not justify the court in setting aside the sale, the order of the court directing such sale having been faithfully observed, and no fraud being shown.

7. FORMER DECISIONS. The cases of *Ayres* v. *Baumgarten,* 15 Ill. 444 ; *Garret* v. *Moss et al.,* 20 ib. 549 ; *Coffey* v. *Coffey,* 16 ib. 141 ; *Jackson* v. *Warren,* 32 ib. 331 ; *Booker* v. *Anderson et ux.* 35 ib. 66, and *Soward* v. *Pritchett,* 37 ib. 517, cited and considered.

8. JUDICIAL SALES—*manner of conducting them—rights of bidders.* The practice is, in sales made by a master in chancery, if the decree of the court does not otherwise direct, to strike the property off to the highest bidder, and it has not been usual to report bids to the court. And where the purchaser complies with all the terms of the sale, it is not usual for the court to refuse to confirm it, unless fraud, accident, mistake, or some great irregularity, calculated to do injury, has occurred.

9. FORMER DECISION. The case of *Dills* v. *Jasper,* 33 Ill. 262, is not considered in harmony with previous decisions of this court, or the practice in this State.

10. PRACTICE—*receiving additional proofs from one party, after submission of cause—without the knowledge of the opposite party.* After a cause has been fully argued and submitted to the court for its decision, it is error for the court to receive additional evidence from either party, without the knowledge of the other.

APPEAL from the Circuit Court of Peoria county; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

The opinion fully states the case.

Messrs. WEAD & JACK, for the appellants.

Messrs. McCOY & STEVENS, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

Appellees make the point, that John Comstock had no right to appeal; that he is not entitled to a hearing upon this record, and that the appeal should be dismissed. To understand this position, a brief history of the case is necessary.

A portion of the heirs at law of the late Norman H. Purple filed their petition in the circuit court of Peoria county, against the other heirs at law of the same, and Ezra G. Sanger and Nathaniel B. Curtis, his guardian, for the partition of a certain tract of land in Peoria county, the petitioners claiming that they, with two of the defendants, were, equitably, the owners in fee simple, as tenants in common, of the undivided one-half of the premises, and Ezra G. Sanger was the equitable owner of the other half. Three of the defendants, namely: E. G. Sanger, Frank E. and Jessie A. Purple, were alleged to be minors, and the prayer was for a partition of the premises.

A summons was issued, and returned served on all the parties, by delivering to each of them a true copy.

A default was taken against Ann E. Purple and N. B. Curtis, and on the same day a guardian *ad litem* was appointed for the infant defendants, who filed his answer, calling for proof of the allegations in the petition.

An order of reference to the master was had, who, in due time, reported, finding title and heirship as alleged.

A decree for partition was duly entered, reciting the facts as to ownership and interests, and commissioners were appointed to set off and allot the premises among the several parties, according to their several interests as found by the decree.

The commissioners reported, that they went upon and examined the premises, and in their judgment they could not be divided without great injury and prejudice to the interests of the proprietors, and recommended a sale of the same, and the court passed a decree of sale by the master in chancery, after a notice of twenty days, by publication in some news-paper published in the city of Peoria, at public auction, the purchaser to pay one-third of the purchase money in cash, at the time of sale, and the balance in equal payments in six and twelve months, with six per cent. interest on the deferred payments, to be secured by a deed of trust on the premises; with the privilege to the purchasers of paying cash in hand, the full amount of the purchase money; and the master was required, after paying the costs of the proceeding, to distribute the balance of the funds in his hands among the parties as specified in the decree.

The master, in due time, reported the sale in strict accordance with the decree, and after giving notice, not only by publication in a public city newspaper, but by posting up copies of it in twenty of the most public places in the county, for more than three weeks prior to the sale, and which contained a full description of the land to be sold, the names of the parties, style of the court and term of the court at which the decree was rendered, and the time, place and terms of sale, as set out in the decree; that he attended at the time and place

mentioned in the notice and offered the premises for sale, and that John Comstock bid therefor the sum of fifteen dollars per acre, and which being the highest and best bid offered, the land was struck off to him at that price; that Comstock paid to him, cash in hand, the full amount of the purchase money, amounting to eleven hundred and twenty-five dollars, and that he thereupon executed, acknowledged and delivered to Comstock a good and sufficient conveyance of the same. The master further reports in what manner he disposed of the money, by which it seems, after paying the costs, there remained in his hands a balance of nine hundred and twenty-two dollars and twenty-two cents. This, he reports, he distributed as follows: one-half of said money, viz: $461.46, he tendered to N. B. Curtis, guardian of Ezra G. Sanger, but which he refused to receive, and the other half, being the like sum, he paid to Jacob Darst, he being the owner of the distributive shares, and entitled to the share of Jessie A. Purple, by an order attached to the report in *Purple* v. *Purple et al.*, No. ——, and also entitled to the share of Frank Purple, by reason of his being such guardian, all which was in accordance with the decree.

The master's report was filed July 10, 1867. The sale was on the 26th December, 1866. Whereupon, N. B. Curtis entered his motion, based upon his affidavit, to set aside this sale.

The affidavit states, that he is the guardian of E. G. Sanger, and that, by virtue of the decree of the court, the master sold the land to Comstock for fifteen dollars per acre, while the fact was, the land was worth fifty dollars per acre; that it adjoins the town of Princeville, and was very desirable and valuable, and had valuable timber growing upon it, and has no doubt, if properly advertised, it would have brought fifty dollars per acre, and says, if it is again exposed to sale, he will give, for the seventy-five acres, two thousand dollars; alleges the land was sold for a greatly inadequate price—for

not more than one-fourth of its value,—and gives a reason why he was not present at the sale—that Darst, who had purchased the interest of the Purple heirs, and thereby equally interested with affiant's ward, told him, in a conversation on the subject, that he knew a man who was willing to give all the property was worth, and that it would not be necessary for affiant to remain; that at that time Darst conceded the land was worth fifty dollars per acre.

Counter affidavits were filed by Comstock and others putting a value on the land of about twenty dollars per acre. Comstock, in his affidavit, states, that in a few weeks after receiving the master's deed, he sold the premises to one Buck, and he, soon after, sold them to Jacob Fast; that Fast took possession and has made considerable improvements and fenced the premises; insists the sale should not be set aside unless the money he advanced be first refunded and the improvements made by Fast paid for, and that they should be notified of these proceedings; says he knows the sale was largely advertised, and was well attended by persons residing in the vicinity of the land, who bid on it; that, at the same hour and place, other lands were sold by the master, which had the effect of bringing many persons together at that time, and that all the lands brought fair prices; that this particular tract brought all it was worth, considering the title to it, which he believed defective, showing wherein; that the tract does not adjoin the town of Princeville, and is not well timbered, but is rough and broken, and not worth fifty dollars an acre, or anything like it; that he never before saw a sale so well attended by parties able to purchase, and who bid so freely as at this sale.

Among other affidavits was that of Jacob Darst, who says he knows the sale was well and thoroughly advertised; that many persons, from the vicinity of the land, attended the sale and bid for the lands offered; that no one considered the tract in question worth more than twenty dollars an acre with a perfect title, and would not bring that much on speculation;

was interested in having the lands bring the highest possible price, and is satisfied they brought a fair price under the circumstances; that before the sale, he had purchased the interests in it of the adult heirs, and was guardian for the minor heirs, and one-half the proceeds came to him, and is satisfied with the sale; that the land does not adjoin Princeville, and is not covered with good timber, and is worth only about twenty dollars per acre with a good title, &c.; denies that he stated to Curtis that he knew a man who would bid forty dollars per acre for the land, but told him he thought he knew a man who would bid that sum for a part of it, but he afterwards understood that the person had not the money and did not wish to purchase; says he exerted himself to obtain a good price for the land, both before and at the sale.

The master in chancery also made an affidavit, showing abundant notice—more extensive than the decree required, was given of the sale; that the sale was fairly made and was kept open more than three hours; that at least forty persons were present, twenty of whom were bidders, and most of them men of wealth, and the bidding was spirited and lively, &c.; that a number of persons from Princeville told him that portions of the tract were worthless, and other portions quite valuable, and that twenty dollars per acre was a fair price, taking the whole tract, &c. This was the substance of the evidence before the court.

On the 10th of August, Curtis brought into court the sum of two thousand dollars, as a first bid for the premises, should a re-sale be ordered.

On the 16th of September, 1867, a decree passed, setting aside the sale, reciting therein the affidavits in support of and against the motion, and that "N. B. Curtis, guardian, &c., having deposited in court the sum of two thousand dollars as a first and standing bid on the premises sold, in case a new sale is ordered, and the court, having heard arguments of

counsel, doth find that said real estate was sold at a grossly inadequate price." .

There were conditions in the decree setting aside the sale, one of which was, that the parties to this proceeding should advance to the master a sufficient sum of money to pay all the costs and expenses of the sale, and interest on the purchase money from the date of its payment, at the rate of ten per cent. per annum; and to John Comstock all his costs and expenses attending the purchase, including fifty dollars to apply on his attorney's fees in resisting the motion; the master to compute the expenses and notify the parties, &c. On compliance with the conditions, the master was required to expose again the premises to sale; if not complied with within the time specified, the report of the master was to be confirmed.

On the 9th of November, the master filed his report, stating therein, that he proceeded to execute this order, and that Comstock refused to receive the money, informing the master that he intended to appeal to the supreme court from the order, and that he, the master, had notified Curtis of such Comstock's intention. On the same day, Darst prayed an appeal, which was allowed, and on the 16th of November an appeal was prayed by Charles K. and William M. Purple, and allowed. An appeal bond was duly executed by Jacob Darst, as guardian, &c.

On the last mentioned day, Comstock presented his petition praying to be made a defendant in the proceedings, and to show cause why the last decree should be set aside and the master's first report confirmed. On the 17th of February, 1868, the court entered an order as prayed, and it was further ordered and decreed, that the decree theretofore made setting aside the sale, should operate and be binding upon Comstock the same as if he had been formally made a party thereto before the decree, and leave was given him to appeal from the decree, by filing bond, &c.

Appellees take this ground, that inasmuch as an appeal was allowed to Darst, who perfected it by executing a bond, and he having failed to bring any record here, and having failed to appear in this court, must be presumed to have abandoned his appeal, both on his own account and of any other person, therefore, they contend, his appeal should be dismissed.

To this, we presume, the present appellant could make no objection, as Darst's appeal is entirely independent of his. They have no connection with each other of any kind.

But appellees contend, that, so soon as Darst perfected his appeal, the case was no longer pending in the Peoria Circuit Court, but, in contemplation of law, was pending in this court, and, consequently, no power existed in the circuit court to make Comstock a party defendant, giving him the right to appeal from the order setting aside the sale.

Admitting Comstock to come in and defend was, doubtless, irregular, but it was in furtherance of justice, the case being still in the Peoria Circuit Court, notwithstanding Darst's appeal, for Comstock had presented his petition to be made a defendant, on the 16th of November, and Darst did not execute his bond on his appeal until the 3d day of December following. Comstock's petition was not granted until the February following, and then on terms which would have compelled him to abide by the order setting the sale aside. The case was pending in the circuit court when the application was made, and before the record was taken to this court; it was granted, and Comstock became a party defendant, and as such could, on his own behalf, take and prosecute his own appeal, independent of Darst or any other party to the proceedings. It was highly proper and just he should be a party to proceedings the effect of which was to deprive him of property for which he had, in good faith, paid his money and received a deed, and of which proceedings he had no notice until they were on the point of consummation. He was entitled to notice of the application to set aside the sale, and his

application to be made a party was in the nature of a bill of interpleader, and no act by Darst, or of any other party, could deprive him of the benefit of it. If it was irregular to make him a party at that particular stage of the case, it was of such a character as, while doing no injury to any one, tended to further justice, and to prevent a great injury which would have ensued to Comstock, which, having no notice, he had no opportunity to defend against and prevent. On the motion to set aside the sale, it was indispensable that Comstock, the purchaser at the sale, should have notice of the motion. *Dunning* v. *Dunning*, 37 Ill. 306.

Having become a party, we have considered the case on its merits, and find no ground, on the proofs before the court, to set aside the sale. Admitting the land sold for an inadequate price, the doctrine of this court is, that, of itself, is not suffi-cient, unless it should be so grossly inadequate as to establish fraud. Here, the order of court, as to the notice of the sale, was more than fully complied with, extra notices having been given in twenty of the most public places in the county ; the sale attended by a large number, many of whom were men of wealth, and all the proceedings conducted with the utmost fairness, and though the land might possibly be worth one hundred per cent. more than the sum actually bid for it, and for which it was sold, that was not sufficient to justify the court in setting the sale aside. If it were so, then but few, if any, judicial sales could be of the least validity. While courts of justice will watch over these sales with a jealous eye, with a view to the discovery of fraud, or of such gross irregularities as shall amount thereto, they will not, and ought not, when the order of the court has been faithfully observed, in the absence of fraud, disturb such sale. In this case, a deed was actually made to the purchaser, the whole of the purchase money having been paid, and it was sought to take the bar-gain from him, by proceedings in court, instituted and carried on to a final order, without any notice to him. Such injustice

168        COMSTOCK *et al.* v. PURPLE *et al.*        [Sept. T.,

Opinion of the Court.

is beyond comment.   He had a right to the benefit of his pur-
chase, though at a low price, for the whole public could have
competed with him, and if there was a bargain in the land, he
was not the only one who could have secured it.   Where a
judicial sale is made at a price below the supposed actual
value of the property, if it proves to be a good purchase, it is
not difficult to find persons who will swear that the price was
grossly inadequate, for such swearing is not at all hazardous,
as it is mere opinion, for entertaining and expressing which,
though false and unfounded, no indictment would lie.   Where
a judicial sale has been fairly and impartially conducted, in
the presence of numbers, and the bidding is spirited and
lively, as in this case, something more than mere inadequacy
of price should be shown to justify a court in setting aside
the sale.   Property does not fetch, and is not expected to
fetch, at such sales, its full value.   The creditor, as a general
thing, has a right to his money, if it be in a case where money
is adjudged, and the debtor's property must be put up for sale,
and a sale forced to bring the money.   Price depends upon
many circumstances, to which the debtor must expect to
become the victim, and the creditors may honestly hope to
gain.   The law allows it, and this court has awarded it in
more than one case.

In *Ayres* v. *Baumgarten*, 15 Ill. 444, citing *Livingston* v.
*Byrne*, 11 Johns. 556; *Tripp* v. *Cook*, 26 Wend. 143; *Wil-
liamson* v. *Dale*, 3 Johns. Ch. 290, it was held as a general
principle, that mere inadequacy of price is not a sufficient
cause for setting aside a sale.   This was a sale by a guardian.

In *Cooper* v. *Curly*, 3 Gilm. 506, which was a sale of mort-
gaged premises, by a master in chancery, the court said, the
English rule of opening biddings on a master's sale, which
was almost a matter of course, upon the offer of a reasonable
advance on the amount bid, if the motion was made before
the confirmation of the report, has not obtained in this coun-
try.   The rule here seems to be, if it be shown there has been

any injurious mistake, misrepresentation or fraud, the biddings will be opened, the reported sale rejected, or the order of ratification rescinded, and the property again put into the market and re-sold.

In *Garret* v. *Moss et al.*, 20 Ill. 549, it was held, in order to set aside a sale because of inadequacy of price, a case of sacrifice must be shown, and where the evidence was conflicting, ranging, as to value, from twenty to one hundred and twenty-five dollars an acre, and the land was sold at fourteen dollars and fifty-nine cents an acre, this court refused to disturb the sale, not being prepared to hold, in view of the evidence, there was such a sacrifice as would justify the reversal of the decree.

In *Coffey* v. *Coffey*, 16 ib. 141, the court held, the conduct of the successful bidder at the sale, setting up a claim to the land, and threatening to litigate it with any purchaser, was such unfairness and fraud in the sale as to warrant a decree setting the sale aside.

In *Jackson* v. *Warren*, 32 ib. 331, which was an action of forcible entry and detainer, under the act of 1861, providing this remedy, where lands have been sold under a judgment or decree, against the party wilfully withholding the possession, the court remarked on the English practice of keeping the biddings open at a master's sale, in order that there may be advances on a bid received by the master, which he reports to the court, by which no one can be a purchaser, but a mere bidder, until a final confirmation of the sale by the chancellor, and said this practice did not obtain in this State; that a valid and binding contract was made when the hammer fell. In the absence of fraud, mistake, or some illegal practices, the purchaser is entitled to a deed on the payment of the money.

In the case before us, the decree of the court specially authorized the master to make a deed on the payment of the cash in hand.

22—49TH ILL.

In *Booker* v. *Anderson and wife*, 35 ib. 66, at page 87, the court explains what was meant by a sacrifice as held in *Garret* v. *Moss*, *supra*, that such sacrifice must amount to a fraud.

In *Soward* v. *Pritchett*, 37 ib. 517, it was held, that where two-thirds of the value had been bid for the land, such inadequacy of price would not, alone, be ground to set aside the sale, yet it would have its weight, when considered with other evidence, in preventing an approval of the master's report of the sale. The case was decided, chiefly, upon the insufficiency of the notice. In this case the court said, although it is the duty of the chancellor to protect a purchaser at a master's or commissioner's sale, it is equally his duty to prevent a sacrifice of the property by fraud, accident or negligence of the officer in conducting the sale. It is a cherished object of courts to give stability to judicial sales, and, at the same time, so far as possible, protect and guard the rights of the owners.

We have been referred, by appellees, to the case of *Dills* v. *Jasper*, 33 ib. 262, which is not considered in harmony with previous decisions of this court or with the practice in this State. The practice is, if the decree of the court does not otherwise direct, to strike the property off to the highest bidder, and it has not been usual to report bids to the court. If the bidder complies with all the terms of the sale, it is not usual for the court to refuse to confirm the sale, unless fraud, accident, mistake, or some great irregularity, calculated to do injury, has occurred.

In the case now before us, the most scrupulous regard has been shown to the order of the court; all the notice required by the decree, and more, was given; bidders attended in great numbers; the land was sold to the highest bidder, for a sum near its proved value; the money was paid and a deed executed to the purchaser, who has sold and conveyed the land to others, not parties to these proceedings, and we cannot perceive the slightest ground for refusing a confirmation of the

master's report, or for setting aside the sale, and the decree setting it aside must be reversed.

We have not considered the affidavits presented to the judge at chambers, after the motion had been argued and submitted, not deeming them evidence. The cause had been fully argued and submitted; the opposite counsel had no notice of these affidavits, and the judge was required to decide the cause on the evidence then properly before him. To receive evidence afterwards, without the knowledge of the opposite party, is contrary to the uniform practice, unjust in itself, and highly improper.

*Decree reversed.*