ELEZAR DEVINE

*v.*

ELIZABETH M. HARKNESS *et al.*

*Filed at Ottawa May 15, 1886.*

1. JUDICIAL SALE—*preventing competition.* An agreement made by the purchaser of land at a guardian's sale, whereby he prevents another person from bidding at the sale who otherwise would have bid a greater sum for the property, affords sufficient ground for a court of equity to set the sale aside.

2. SUBROGATION—*in favor of fraudulent purchaser.* Where a purchaser of land at guardian's sale is guilty of fraud in making a corrupt agreement, whereby he prevented competition and obtained the land at less than its value, and as a part of the price paid off a mortgage on the premises, in which interest was reserved at the rate of ten per cent, there will be no error in allowing him only six per cent interest on the money paid by him. His payment being one made in wrong, in the carrying out of a wrongful purchase, presents no case for the application of the equitable doctrine of subrogation.

10—117 ILL.

Appeal from the Circuit Court of DeKalb county; the Hon. Charles Kellum, Judge, presiding.

Mr. R. N. Botsford, and Mr. A. B. Coon, for the appellant:

While we recognize the general rule that a purchaser at a public sale will not be allowed to profit by his own misconduct, yet there is another rule, equally well sustained, that it is the policy of the law to uphold judicial sales; and a court of equity will not permit a judicial sale to be set aside without clear and satisfactory proof that some wrong will be done or some injury suffered by allowing the sale to stand. *Wilson* v. *Kellogg*, 77 Ill. 47; *Williams* v. *Rhodes*, 81 id. 571; *Conover* v. *Musgrove*, 68 id. 58; *Milford* v. *Stalzenbach*, 46 id. 303.

It was error to state the account on the basis of six per cent interest on the mortgage debt paid by appellant. That was drawing ten per cent, and appellant purchased the farm subject to the mortgage. By paying the mortgage debt he was entitled to be subrogated to the rights of the mortgagee. *Harper* v. *Ely*, 70 Ill. 581; *Simpson* v. *Gardner*, 97 id. 237.

The account as stated by the master does appellant injustice, in that it charges him the maximum price fixed by any reliable witness for the rent of the property, and credits him with the minimum figures placed by witnesses on the improvements put on the premises, and with only six per cent on the mortgage indebtedness paid by him.

Messrs. Hopkins & Aldrich, and Mr. G. W. Dunton, for the appellees:

Any agreement made to prevent competition at judicial sale is fraudulent, and when competition is thereby prevented the mode is immaterial, and the sale will be set aside against the guilty party. 1 Story's Eq. Jur. sec. 293; Freeman on Executions, sec. 297; Freeman's Void Judicial Sales, sec. 38.

Such an agreement should vitiate the sale. It is designed and calculated to stifle competition. It is a fraud upon the

law and against public policy, and will avoid the sale even at law, so that a deed issued in consequence of it will convey no title. *Lloyd* v. *Malone,* 23 Ill. 48; *Longwith* v. *Butler,* 3 Gilm. 42; *Garrett* v. *Moss,* 20 Ill. 552; *Doolin* v. *Ward,* 6 Johns. 194; *Wilber* v. *Howe,* 8 id. 444; *Wicker* v. *Hoppock,* 6 Wall. 94; *Cox* v. *Izard,* 7 id. 560.

Devine became primarily liable for the mortgage debt as a part of the purchase money, and therefore the doctrine of subrogation does not apply. He was only paying his own debt. 1 Jones on Mortgages, sec. 876.

No case can be found where a person becomes entitled to subrogation by reason of his own fraud. Bump on Fraud. Con. 595.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a bill in chancery, filed by the appellees, the widow and minor children and heirs of John B. Harkness, deceased, to set aside a guardian's sale of the real estate belonging to said children. The court below decreed in favor of the complainants, and the defendant appealed.

It appears that John B. Harkness died March 18, 1878, intestate, seized of the premises in question, an improved farm of two hundred and ten acres, in DeKalb county. The widow was appointed guardian of the children, and was also administratrix of the estate of her husband. During the fall of 1879, Mrs. Harkness was endeavoring to get a purchaser for the farm, and met the appellant, Devine, when an arrangement was made that the farm should be sold at public auction as soon as an order of court could be obtained for the purpose; that Devine would bid at the sale $35 per acre for the land, and in the meantime should go into possession of the premises. In pursuance of this arrangement, Devine, in October, 1879, took possession, and did from eighty to one hundred acres of fall plowing, with the understanding that if he did not secure the land, he was to be paid for the plowing

at the rate of one dollar per acre.   On February 2, 1880, the
guardian filed, in the county court of De Kalb county, her
petition for the sale of the land.   It was subject to a mort-
gage for $5000, bearing ten per cent interest, and to a judg-
ment for $262.40.   On February 12, 1880, the county court
granted an order of sale, authorizing the sale at not less than
$35 per acre, and out of the proceeds providing for paying
off said mortgage and judgment, and the dower right of the
widow.   The guardian's sale was had under the order March
10, 1880.   Devine bid at the sale $35 per acre, and fifty-four
cents per acre in addition for interest from January 1, 1880,
and the land was sold to him for that price.   The widow
made to him a quitclaim deed of her interest, and he received
a guardian's deed, and paid off the mortgage and judgment.
This bill to set aside the sale was filed April 20, 1880.

The ground alleged for setting aside the sale is, that one
Varty was present at the sale, intending to bid for the land,
and Devine made an agreement with Varty, to the effect that
if the latter would refrain from bidding, he (Devine) would
get the land at the bid he had agreed to make, and would
then convey the same to Varty for $37.50 per acre, and that
in pursuance of said arrangement Varty refrained from bid-
ding, when, but for the arrangement, he would have bid as
high as $40 per acre in order to get the land.

No question is made upon the legal effect of such an agree-
ment as affording sufficient ground for setting aside the sale,
but it is denied that there was such an agrement made, and
it is insisted the decree is not sustained by the evidence.
There is a direct conflict in the testimony of Varty and
Devine upon the subject.   Varty testifies that some time
before the sale,—about two months,—he had a conversation
with Devine; that he told Devine he would like to buy the
place; that Devine said he had paid out considerable money
looking up the title, and if he, Varty, or any one else, bought
the place at the sale, he would lose what he had paid out, but

said he did not need the place, but that Mrs. Harkness wanted him to make a bid on it, and that if Varty would let him have it he would let Varty have the place by paying what trouble and expense he had been to; that he (Varty) was present at the sale; that he came to bid on the place if he could not make the arrangement with Devine, previously talked of. He says: "On the day of the sale I saw Devine, and asked him if he got the place on his bid of $35 per acre, what he would let me have the place for; he asked what I would give; I told him $37.50 per acre, and he said I should have it for that. I also told him if I could not make arrangements with him as to what I was to have it for, I should bid at the sale. This was prior to fixing the price at which I was to have the place. * * * I intended to bid at the sale, and had made up my mind to bid as high as $40 per acre.". All this is contradicted by Devine, as respects the transaction with him. There was some corroborative evidence as to Varty, which we need not particularly advert to. There appears a preponderance of evidence in favor of the alleged agreement, and we can not say that the decree, in the respect of setting aside the sale, is not sustained by the evidence.

Exceptions are taken to the account as stated by the master. It is claimed there was error in allowing appellant only six per cent interest on the amount of the mortgage indebtedness he paid off, the mortgage debt bearing ten per cent interest; that having paid the mortgage on the land bearing ten per cent interest, he should be subrogated to the rights of the holder of the mortgage; that the setting aside of the sale leaves appellant in the position of a purchaser of the mortgage debt and security. Paying the mortgage debt to the mortgagee was no more than paying the amount of it to the guardian, and was but paying appellant's bid for the land. The payment was one made in wrong, in the carrying out of a wrongful purchase, and presents no case for the application of the equitable doctrine of subrogation.

The master allowed against the appellant $3.25 per acre as the yearly rental value of the land for six years.    In this we think there was error.    Upon the evidence appearing in this record, we are of opinion that at the utmost $3 per acre should have been the extent of the allowance for rent.

For this error the decree will be reversed, in respect of the amount adjudged to be paid to the appellant, but in all other respects affirmed, and the cause will be remanded for further proceedings not inconsistent with this opinion.

*Decree reversed in part and in part affirmed.*