EDWIN J. QUIGLEY

*v.*

EVA H. BRECKENRIDGE.

</div>

*Opinion filed June 17, 1899—Rehearing denied October 6, 1899.*

1. JUDICIAL SALES—*discretion of court in disapproving sale is not arbitrary.* The chancellor has a broad, but not arbitrary, discretion in the matter of approving or disapproving a master's sale made subject to the court's approval by the terms of the decree; but such discretion must be exercised according to rules of law.

2. SAME—*court's action in approving or disapproving sale may be assigned for error.* The court's action in approving or disapproving a master's sale may be assigned for error by the proper parties.

3. SAME—*parties seeking re-sale for advance bid should guarantee against loss.* Parties objecting to the confirmation of a master's sale on the ground that the property will bring more on re-sale should bring the money into court, or make a binding advance bid, or guarantee against loss on re-sale.

4. SAME—*when court should not disapprove sale.* Where a master's sale has been regularly conducted and the property sold at a fair cash price, the court should not disapprove the sale on the strength of affidavits that a certain party has offered an advance, where such offer is not in binding form or accompanied by any guaranty.

5. SAME—*employment of another person to bid is not fraud.* That the party purchasing at a master's sale did not personally bid, but employed another to bid for him, is not an irregularity which may be urged against confirmation of the sale.

APPEAL from the Circuit Court of Fulton county; the Hon. JOHN A. GRAY, Judge, presiding.

On November 16, 1897, John F. Bordner filed a bill for partition against Alfred Bordner and others, heirs of one Jonathan Bordner, deceased, who died intestate on September 19, 1873. Jonathan Bordner, at the time of his decease, was seized of one hundred and sixty acres of land in a certain section 25, and twenty acres in a certain section 26, in Fulton county, Illinois. It was this land, which the bill was filed to partition. Decree was entered, fixing the interests of the parties in the premises, and finding that Hannah E. or Eva H. Breckenridge was entitled to an interest of one-tenth and one-tenth of one-tenth therein. Partition was ordered according to the interests of the parties, and commissioners were appointed to make such partition. The commissioners reported that the lands were not susceptible of division, and estimated their value to be $12,300.00. Decree of sale was then entered, directing the master to give notice of sale, and to make sale of the property. The decree of sale provided, that, "upon the confirmation of the report of the said master in chancery, * * * he shall execute and deliver to the purchaser or purchasers of the premises so sold a proper deed or deeds of conveyance." The notice of sale stated, that the terms would be "cash in hand upon the approval of sale by the court." The decree also directed, and the notice provided, that the premises would not be sold, nor either of the tracts embraced therein, unless the bid or bids therefor should be equal to at least two-thirds of the valuation put upon the premises by the commissioners. The premises were sold by the master in chancery of the court on March 12, 1898, at the door of the court house in Lewistown, in Fulton county, for $10,400.00 in cash to the appellant, Edwin J. Quigley. The master in chancery made his report of sale, stating that he had offered said lands for sale in

separate tracts, as required by law, and offered the same in eighty-acre tracts, and also offered the twenty-acre tract separately, and then one tract with another added to it, and so on, and then offered the same all together.

Upon the coming in of the master's report of March 21, 1898, the appellee, Eva H. Breckenridge, one of the defendants in the partition suit, filed her exceptions to the confirmation of the report. Affidavits were filed in support of the exceptions. A sworn answer was filed by the purchaser, Edwin J. Quigley, the appellant, denying the truth of the matters set up in the exceptions of the appellee, Breckenridge. Affidavits were filed in support of appellee's answer.

On May 28, 1898, the circuit court entered a decree, sustaining the exceptions to the confirmation of the report, and ordering that the report be not approved, and that the sale be set aside, and directing the master to make re-sale of the property. The appellant, Quigley, who, upon his motion, had been given leave to defend, and had been made a party to the cause, has appealed from the decree of the court, setting aside the sale and ordering a re-sale. The appeal is to this court, and brings before us for review the correctness of the decree so entered by the court below.

LUCIEN GRAY, for appellant.

I. R. BROWN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The exceptions of the appellee, Breckenridge, to the confirmation of the master's report of sale set forth that, at the sale, the appellant bid for the property by an agent duly authorized and instructed to so bid; that, according to her information and belief, the appellant "had pre-arranged matters with a certain party in interest, who was desirous of bidding upon the said premises, and

who was then and there ready and willing to buy said lands at a much larger price than the price upon which the said lands were bid off, but, by reason of the said arrangement with the said Edwin Quigley, he did not bid upon the said premises, and was thereby debarred from bidding." The exceptions charge, that fraud and deception were practiced by the appellant in deceiving another party, who stood there ready to bid more for the land than the bid of appellant; that there was a great deal of confusion at the time of the sale; that it was raining; that persons were present with umbrellas hoisted over them; that one W. W. Crabtree authorized one Sherman McClouth to bid an amount greater than the bid made by appellant; that, through inadvertence, mistake, or in the confusion of the bidding, the master did not get the bid of Crabtree, but cried the bid of appellant, and hastily struck the property off to appellant's agent for $10,400.00; that, had the master "observed or got" the bid of Crabtree, the latter was willing at that time and ready to pay $11,500.00 for the property, and was financially able to pay that amount; that Crabtree stands ready to make his offer good, and to pay $11,500.00 for the premises.

The exceptions filed by the appellee Breckenridge were not sworn to.

The grounds, upon which it is sought by the exceptions and affidavits in support thereof, to set the sale aside, are, *first*, that the appellant made an arrangement with Crabtree, by which the latter agreed not to bid for the property and thereby to allow the appellant to obtain it; and *second*, that, when Crabtree had changed his mind and concluded to bid, there was so much confusion at the sale, by reason of the rain and for other causes, and the property was struck off so hastily by the master, that Crabtree was prevented from making a bid in excess of that made by appellant.

It is well settled by the authorities, that any arrangement, made for the purpose of reducing competition at a

judicial sale, is fraudulent and void; and, if the purchaser at such sale is a party to such an agreement, he can take no benefit under his purchase, and the sale will be set aside by the court. (*Longwith* v. *Butler*, 3 Gilm. 32; *Devine* v. *Harkness*, 117 Ill. 145; *Ingalls* v. *Rowell*, 149 id. 163; *Coffey* v. *Coffey*, 16 id. 141; *Stoker* v. *Greenup*, 18 id. 27; *Mapps* v. *Sharpe*, 32 id. 13; *Meeker* v. *Evans*, 25 id. 283). The difficulty in the present case is, that the testimony does not establish the existence of such an agreement as is alleged to have been made.

It is true that, in this class of cases, courts are vested with a sound discretion. The chancellor has a broad discretion in the matter of approving or disapproving of sales made by masters in chancery, especially where, as here, the deed is, by the terms of the decree, not to be made to the purchaser, until after the confirmation of the sale. (*Jennings* v. *Dunphy*, 174 Ill. 86). But the discretion, which is thus vested in a court of chancery, is not a mere arbitrary discretion, but must be exercised in accordance with established principles of law. (*Ayres* v. *Baumgarten*, 15 Ill. 444). And a decision, approving or disapproving a master's report of sale, may be assigned for error. (*Ayres* v. *Baumgarten, supra; Barling* v. *Peters*, 134 Ill. 606). In *Barling* v. *Peters, supra*, we held (p. 619) that, before a judicial sale has been approved, "a re-sale will be ordered, if fraud or misconduct in the purchaser, the officer conducting the sale, or other person connected therewith, is shown, or if it is made to appear that a party interested had been surprised, or led into a mistake, by the conduct of the purchaser, officer, or other person connected therewith. But courts will not refuse to confirm a judicial sale, or order a re-sale, on the motion of an interested party, merely to protect himself against the result of his own negligence, where he is under no disability to protect his own rights at such sale. Where a judicial sale has been conducted in the usual manner, and the purchaser is a stranger to the order of sale, mere inadequacy

of price will not justify a court in vacating a sale, so as to deprive the vendee of the benefit of his purchase, unless the inadequacy is such as to amount to evidence of fraud. * .* * While courts should carefully guard judicial sales against all attempts to depreciate the value of the property sold, or to prevent full and fair competition, due regard must also be had to the policy of the law to give stability to such sales." (*Comstock* v. *Purple*, 49 Ill. 158; *Duncan* v. *Sanders*, 50 id. 475; *Heberer* v. *Heberer*, 67 id. 253). None of the parties here were minors, or under any disability.

The decision of the court below was not made after hearing the oral testimony of the parties in open court, but was based entirely upon written affidavits. The only affidavits upon the subject of an agreement to prevent bidding at the sale are those of the appellant, the purchaser at the sale, and of Crabtree, who claims to have been ready to make a higher bid than that made by the purchaser. These two parties flatly contradict each other. The appellant swears positively, that he did not "prearrange matters with any person whomsoever, desirous of bidding for said premises, whereby any person was debarred from bidding," and denies "that any fraud or deception was practiced by him, or any one for him, in regard to bidding at said sale." Crabtree swears, that, before the sale, he had a conversation with Quigley concerning the expected sale of the premises and therein promised Quigley that he would not bid against him, Quigley, and would not bid upon the premises at the sale. He does not allege that any consideration was promised him by the appellant for making such a promise; nor does he say that he was requested, or in any way induced by the appellant, to make the promise in question. It would appear, that his failure to bid at the sale did not result from his having made the promise, because he says in his affidavit, that, before the biddings were closed he had made up his mind to make a bid for the property. He states that he was present at the sale, and,

after he heard the amount of appellant's bid, he directed McClouth to make a bid for him, and that the property was struck off by the master to appellant before McClouth could get a chance to put in a bid, and before the latter could understand the directions of Crabtree to him. McClouth swears, that he was authorized by Crabtree to bid for the premises when they should be offered in a body. But John W. Breckenridge, a farmer, who was well acquainted with Crabtree, and had lived in Fulton county for over forty years, was present at the sale, and says that he stood near Crabtree during the sale, and said to him, "Warren, why don't you bid on this land?" Crabtree replied, "I don't want it; it is too dear land for me; I want to buy cheap land." Breckenridge says, that the words, so uttered by Crabtree, were spoken while the master was crying the sale. Inasmuch as the appellant and Crabtree, who both have an interest in the matter, the appellant to sustain the sale, and Crabtree to have it set aside that he may get the property at another sale, contradict each other as to the making of the alleged agreement, we are not satisfied in our minds that any such agreement was made.

It has been held in certain cases referred to by counsel, that, in case of an agreement made for the purpose of preventing competition at a judicial sale and reducing the property to be sold below its fair value, the question is not whether any injury has been done to the party selling, but what was the purpose of the parties making the agreement, when they entered into it; that is to say, that the validity of the agreement is tested not by its results, but by its objects, as shown by its terms. The cases thus referred to are cases where actions were brought upon the illegal agreements. Of course, no action could be maintained upon such an agreement, because, by its terms, and irrespective of its consequences, it is against public policy. (*Gibbs* v. *Smith*, 115 Mass. 592; *Thompson* v. *Davies*, 13 Johns. 112).

As Crabtree finally changed his mind, and concluded to bid, notwithstanding the promise, which he made, as he says, to the appellant, he places his failure to make his bid solely upon the alleged hasty action of the master and the alleged confusion existing at the sale. The contention of appellee upon this latter subject is unsupported by the weight of the testimony. Crabtree and McClouth alone swear that there was any undue haste in the making of the sale, or that there was any confusion at the time of the sale. On the contrary, the master himself, the attorney who made the bid for the appellant, and five other persons, who were present at the sale, swear, that the sale was conducted fairly and in a leisurely manner, and that abundant opportunity was given to everybody to bid, who desired to do so. Lemuel W. Potts swears that he bid at the sale himself; that Crabtree stood near him; that, after the master had offered the land in separate tracts, he offered them all together and cried the same an unusually long time; that, after the bid of $10,400.00 was made, the master repeatedly gave warning that the lands were to be sold for that price, and cried in a loud voice "Fair warning, look out, I am going to sell it," a number of times before the property was struck off to appellant; that the master called attention to the land and its advantages and good qualities; that the sale was in every respect open and fair, and according to the usages in case of such sales; and that affiant was a farmer and owned two hundred acres of land within four miles of the land sold. R. M. Hinde swears, that he was present at the sale, and that he bid for the lands, when they were offered all together, the sum of $10,300.00; that afterwards the master received a bid of $10,400.00 and cried the latter bid at least three times, and gave fair warning that the premises would be sold for said bid; that it was raining slightly during the sale, but only a small number of persons present had umbrellas hoisted; that there was no undue confusion at the

sale. There are a number of other affidavits to the same effect as those already referred to.

Where a sale of this kind is objected to, the objectors, asking for a re-sale, should bring the money into court, or offer to make an advance bid, or give a guaranty that there will be no loss on a re-sale. In *Ayres* v. *Baumgarten, supra,* we said: "No money was brought into court; nor was any *binding* offer made of an advance upon the price. There was, therefore, no certain assurance, that the property would bring anything more on a re-sale. As a general principle, mere inadequacy of price is not a sufficient cause for setting aside a sale." In *Allen* v. *Shepard,* 87 Ill. 314, we said, in reference to a sale of this kind: "No *guaranty* or *reliable assurance* was given to the court that, at another sale, the property would command any higher prices than those obtained at this sale." In *Jennings* v. *Dunphy, supra,* where the action of the lower court in setting aside a sale was approved, the party, filing exceptions to the report of sale, not only offered and agreed, in case of re-sale, to pay $400.00 more than the amount of the bid which had been made, but gave a bond with sufficient sureties for the due performance of the proposed agreement.

In the present case, Crabtree states that he was willing to pay $11,500.00 at the sale, and that, if the property is again struck off, he will bid that amount at the next sale. But his mere statement, that he will make a bid, is of no binding force. He offered no bond or guaranty, that he would make the bid spoken of in his affidavit. A man, who will make an illegal promise with a view of preventing competition at a judicial sale, and then admit that he proposed to violate his promise, should give some other assurance than a mere statement in an affidavit, that he will, at a subsequent sale of the property, bid and pay therefor the large sum of $11,500.00.

It has been said, that the appellant did not bid at the sale himself, but that an agent or attorney made the bid

for him. The employment of another person to bid is not improper. (*Ingalls* v. *Rowell, supra; Gibbs* v. *Davies*, 168 Ill. 205). In the latter case we said (p. 210): "It is within common observation and knowledge, that bidders at a sale are frequently the representatives of other persons, and no reason is perceived why an administrator, master in chancery or sheriff, making a sale, should not issue the certificate of purchase or execute the deed, as the case may be, to any one indicated by the bidder as the purchaser at the sale."

Some of the parties making affidavits in support of the exceptions to the confirmation of the sale state that the property was worth something over $12,000.00. But it must be remembered that, by the terms of the decree, the sale was for all cash; and, taking all the affidavits together, we are not satisfied that $10,400.00 was not the fair cash value of the property. At any rate mere inadequacy of price, as has already been stated, will not justify a court in setting aside the sale, so as to deprive the vendee of the benefit of his purchase, unless such inadequacy amounts to evidence of fraud. Here, there was no such inadequacy as to amount to proof of fraud.

Public policy requires there should be stability in judicial sales, and that they should not be disturbed for slight causes; otherwise property cannot be expected to bring its value at such sales. (*Conover* v. *Musgrave*, 68 Ill. 58).

Giving our full adherence to the doctrine, that a court of chancery has large discretion in the matter of these sales, and that the sale is in itself incomplete, until it is confirmed, and confers no right in the land upon the purchaser, we are yet of the opinion that, upon this record, the sale, set aside by the court below, was fair, and should have been allowed to stand.

Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*