## William Slack v. William Cooper, Master in Chancery, et al.

### Gen. No. 11,828.

1. FORECLOSURE SALE—*effect of, where made under misapprehension.* A sale made by a master under the impression that the bidder represented the complainant, when in fact such party was a defendant seeking to take advantage of the absence of the complainant, may be disregarded by him where he does not offer to comply with the terms of sale and pay cash or arrange to pay cash.

2. FORECLOSURE SALE—*what equivalent to payment of cash.* When the bid at a foreclosure sale is made by the complainant and the amount bid does not exceed what is due the complainant under the decree, the requirement that the sale be for cash is satisfied to the same extent as if paid in money when the amount is credited on the decree, and the complainant need not pay his bid in cash.

Foreclosure proceeding. Error to the Circuit Court of Cook County; the Hon. EDWARD O. BROWN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed July 11, 1905.

**Statement by the Court.** One of the defendants in error, the German Old People's Home, obtained a decree foreclosing a trust deed upon the premises therein described, and it was ordered that said premises be sold at public auction for cash to the highest and best bidder, the decree to be executed by appellee Cooper, master in chancery, and the master's report of sale to be subject to confirmation by the court. At the time advertised or perhaps five minutes thereafter, at the room provided for sales in judicial proceedings by the Chicago Real Estate Board, the master offered the premises for sale. The representative of the Old People's Home, the holder of the decree, had not yet arrived. Plaintiff in error was present with his client, who was one of the parties defendant in the foreclosure proceeding. The master proceeded with the sale at once, acting, as he states, under a misapprehension and supposing plaintiff in error to be a representative of the complainant in the suit. When the master asked for bids, plaintiff in error quickly took advantage of the situation and offered $3,000 for the premises. The amount found due the complainant by the decree was $8,197 with costs and solicitors' fees, and there is testimony tending to show that the premises were fairly worth more than twice the amount of the bid. The master states that being still under the impression that plaintiff in error represented the complainant, he said to him in substance, that the bid would "leave you a deficiency of about $5,800," or words to that effect, and being satisfied that the bidder understood the situation the master announced the sale of the premises for $3,000 to plaintiff in error, who then said "that the bid was in the name of William Slack" and thereupon left the room with his client. No cash payment was made or tendered to the master. While the latter was still on the sales stand checking up his sales, the complainant's solicitor entered, having met Slack about fifty feet away from the sales room. The master at once told complainant's solicitor that his representative had bid $3,000 at the sale, and was then informed that the said solicitor had no representative, and upon learning the name of the bidder said

solicitor told the master who said bidder was. The master stated the misapprehension under which he had acted and sent complainant's solicitor after Slack to tell him that the sale was a mistake and that he, the master, would reopen the sale for higher and better bids and that he, plaintiff in error, should return. The evidence is not contradicted that this message was delivered to Slack almost immediately and that he refused to return. The master thereupon made the public announcement from the sales stand that inasmuch as he had by mistake supposed Slack to be an agent of the complainant and acting under that misapprehension had accepted his bid without payment of any money on account of the purchase, and had made the sale to Slack before the arrival of complainant's solicitor within a reasonable time of the hour fixed for the sale, and had given notice to Slack of his intention to resell the premises, the sale would be reopened for higher and better bids. Thereupon complainant's solicitor offered and bid the sum of $7,000, and the bid having been several times announced and none higher or better having been made, the premises were struck off to the complainant for that sum. The master filed a report of sale, setting forth the above facts.

Plaintiff in error subsequently filed an intervening petition asking that the alleged sale to him be approved and affirmed and that the sale to the German Old People's Home, complainant herein, be disaffirmed, to which petition answers were filed. Upon hearing, the trial court ordered that the bid of plaintiff in error and also that of complainant be rejected and a new sale had.

CHARLES K. LADD, for plaintiff in error.

HENRY HORNER, JR., and CHARLES GOODMAN, for defendants in error; JULIUS ROSENTHAL, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Plaintiff in error contends that the acceptance of his bid by the master made a binding contract enforcible both against and in favor of the bidder.

It distinctly appears in this case that the master's acceptance of the bid for $3,000 was under a misapprehension, he supposing that plaintiff in error represented the complainant and that no other bidders would attend the sale. He states that he felt he had through this misapprehension "Sold out the complainant to the satisfaction of the defendant." It appears that at the subsequent sale made with full notice to plaintiff in error, the premises were actually bid off for $7,000. There need be no time lost, therefore, in considering the adequacy of the bid made by plaintiff in error or the value of the premises. It is enough that within less than half an hour after the alleged sale to plaintiff in error upon full notice to him of the resale, the premises brought two and a third times the amount of his bid. It is evident, therefore, that a grave injustice would be done the complainant, at least, if plaintiff in error should succeed in securing the mortgaged premises for which others were willing to pay $7,000, by paying only $3,000 to apply on a decree for $8,197 exclusive of the costs and solicitor's fees which the decree included.

Upon hearing the intervening petition filed by plaintiff in error asking that the sale alleged to have been made to him for $3,000 upon his bid be approved and affirmed, the chancellor found that by the decree the sale was ordered to be made for cash, that by reason of the master's misapprehension and mistake all the parties interested did not have an equal and sufficient opportunity to bid thereon, that if the sale had been made in such manner as to give all proper bidders an opportunity to bid, the premises would have brought $7,000, and that it was for the benefit of that one of the defendants against whom a deficiency decree might be rendered, as well as of complainant, that both the alleged sales be disapproved, and a sale made such as the decree provided for.

It is apparent that the sale to plaintiff in error was not made for cash. No offer of deposit or payment was made until after the master had made the resale. In Dills v. Jasper, 33 Ill., 263-272, it is said that if the order upon

which the master acts "contains special directions in regard to requiring a deposit, they should be followed." The decree in this case does not contain any such special provisions. It appears, however, that it directed the sale to be made at public auction for cash, and in the absence of any special directions as to the manner of payment, a sale can scarcely be said to have been made for cash, when a bidder after making a bid which is accepted, goes off without making or offering to make any payment whatever or any arrangement for payment." When the bid is made by the complainant in the foreclosure proceeding and the amount bid does not exceed what is due the complainant under the decree, the requirement that the sale shall be for cash is satisfied to the same extent as if paid in money when the amount is credited on the decree, and the complainant need not pay his bid in cash. Sage v. Central R. Co., 99 U. S., 334-339; Reinhardt v. Seaman, 208 Ill., 448-454; Koerner v. Gauss, 57 Ill. App., 668-671. Not so, however, when, as in the case at bar, the bidder is not a judgment creditor but an outsider, bidding for himself. It is said in Dills v. Jasper, *supra,* that "a bid with or without a deposit, although it is accepted by the master, does not become an absolute contract until it is approved by the court." The bid of plaintiff in error has not been so approved and may be regarded in this case as a mere agreement by plaintiff in error "to purchase the property upon the terms named if the same are approved by the court." In the case last cited it is further said that "the master may reject the bid and may again expose the property for sale" if the amount of the bid is not deposited with him at the time of its acceptance or immediately thereafter. In the case at bar there is nothing to indicate that the master intended to waive the requirement of cash payment except as to the complainant, and nothing to indicate that he intended to or did waive the requirement as to plaintiff in error. It was not complied with and the master had a right to reject the bid and again expose the premises for sale, as he did upon

actual notice to plaintiff in error, who even then made no effort at compliance until after the resale.

It is apparent that there were irregularities in the conduct of the sale, which in our judgment amply justified the action of the chancellor in setting aside and refusing to approve both sales, that to plaintiff in error and the subsequent sale to complainant, as was done. Not only was the bid of plaintiff in error inadequate as to price, but it was accepted by the master under a misapprehension as to the purchaser's identity without which such a bid would not apparently have been accepted. No cash accompanied the bid and no arrangement for paying it as the decree required was made. Plaintiff in error was not a stranger to the litigation and could not but be aware that he was taking advantage of the non-arrival of complainant's counsel, and that the master was either acting under some misapprehension or else was not dealing fairly with complainant nor with that one of the defendants who would be liable under a deficiency decree. "Although gross inadequacy of price alone will not be sufficient to avoid a sale under judicial process, yet it will when combined with irregularity in making the sale or even slight circumstances indicating unfairness or fraud, furnish sufficient ground for equitable interposition." Smith v. Huntoon, 134 Ill., 24-30; Miller v. McAlister, 197 Ill., 72-78; Quigley v. Breckenridge, 180 Ill., 627-631. We are of opinion that in disapproving and setting aside both sales, the chancellor exercised a sound discretion. Plaintiff in error was not a stranger to the order of sale, and it would be inequitable to allow the premises to be sold to him under the circumstances disclosed by this record for the amount of his bid.

In Quigley v. Breckenridge, *supra,* it is said that a decision approving or disapproving a master's report of sale may be assigned for error.

For the reasons indicated the decree of the Circuit Court complained of is affirmed.

*Affirmed.*