Julius F. Smietanka, Trustee, Appellee, v. Harry O. Myers et al., Defendants.
Appeal of Helen J. Ostrowski and Walter Konieczka, Appellants.

Gen. No. 41,701.

92

Heard in the first division of this court for the first district at the April term, 1941. ▮▮▮ Opinion filed June 30, 1941. Rehearing denied July 14, 1941.

OSTROWSKI & NOEL and WILLIAM VIHON, both of Chicago, for appellants; WILLIAM VIHON, of counsel.

SMIETANKA, CONLON & NOWAK, of Chicago, for appellee; LEON J. NOWAK, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

This appeal by the intervening petitioners, Ostrowski and Konieczka, is from an order entered December 20, 1940, which dismissed their petition, set aside an order entered November 10, 1938, approving

and confirming a sale held February 16, 1938, and directed the special commissioner to advertise and re-sell the premises.

Smietanka is trustee named in a trust deed executed by Harry A. and Bertha L. Myers on January 15, 1929, to secure payment of 210 bonds of the aggregate amount of $45,000. He filed his complaint to foreclose this trust deed March 22, 1933. January 10, 1936, a decree was entered in complainant's favor finding that $48,872.81 was due on outstanding bonds and $2,375.82 for fees and charges. The decree provided that in case of default of payment, with interest at 5 per cent from October 22, 1935, the date of the commissioner's report, the premises should be sold "for cash." The decree also directs "that should anybody purchase at the aforesaid sale other than *Julius F. Smietanka, trustee,* the said Julius F. Smietanka, as trustee, upon receipt by him of the net proceeds of said sale, shall pay to the various owners of the bonds and interest coupons, their pro rata share of the proceeds of said sale"; that the court retains jurisdiction to appoint a receiver to collect the income from the premises pend-ing the period of redemption and for the purpose of entering a deficiency decree against Harry O. and Bertha L. Myers.

The special commissioner upon whose report the decree was entered, filed his report of sale and dis-tribution November 10, 1938. The report was in usual form and recited that "said Complainant, Julius F. Smietanka, as Trustee, offered and bid therefor the sum of $52,459.70 cash," and this being the highest and best bid was accepted. The report showed pay-ment of the items of costs and expenses and credited on the decree the amount of $49,540.68. It also stated the delivery to the purchaser of the usual certificate of sale and that there was still due to complainant the sum of $5,000. Vouchers are attached for the respec-

tive payments running to the special commissioner and signed "Julius F. Smietanka, Trustee, Complainant's Solicitor."

The intervening petitioners, while not made parties defendant to the original bill, entered their appearance in the cause. They filed no answer. They were subpoenaed as witnesses upon the hearing before the commissioner, produced their bonds and the amount due to each of them was found in the report and set forth in the decree. Their appearance in the cause was entered by their solicitors who seem to have had notice of all proceedings.

January 26, 1939, the petitioners filed their petition setting up their ownership of certain bonds, averring that they had not authorized the trustee to bid at the sale in their behalf, and praying that their respective pro rata share of the proceeds of the sale might be paid to them in cash. The petition alleged (the answer admits) there was no clause in the trust deed authorizing the trustee to bid in the mortgaged property on behalf of the holders of the unpaid bonds and interest coupons.

The trustee and the special commissioner answered. The commissioner stated he held the sale as directed by the decree. The trustee admitted the bonds of the petitioners were not deposited with him as were the bonds of all other owners and that petitioners had not given him written authority to use their bonds as he several times requested. However, the trustee averred there was no other bidder; that he therefore bid the amount of $52,459.70, not in cash but on the indebtedness due him as trustee; that no cash was paid; that he receipted the special commissioner as on the indebtedness; further (and this was the gist of his defense) that petitioners through their solicitors of record, prior to the approval of the report of sale and distribution, had full information as to the facts and circumstances of the sale, knew that it was not actually for cash, and with such knowledge acquiesced, con-

sented to and approved the order of confirmation. The court heard the evidence and dismissed the petition. It appeared petitioners made no demand for their pro rata share of the proceeds of sale until after the term of court had expired at which the report of sale was approved. The trustee, Mr. Conlon (who presented the report of sale and distribution to the court), Mr. Migrom (an attorney in the office of the trustee), and attorney Ditchie of the trustee's office, gave testimony tending to show that Mr. Noel and Mr. Ostrowski (solicitors for petitioners) had full knowledge of all the facts and circumstances connected with the sale and full knowledge that the trustee (in default of other bidders) bid in behalf of all the bondholders. Mr. Bieg, from the office of special commissioner Doyle, testified (and his evidence is uncontradicted) that no cash passed through the special commissioner's office on account of the sale.

Noel and Ostrowski were called as witnesses under § 60 of the Civil Practice Act. Both said Noel attended court before Judge KLARKOWSKI on November 10, 1938, when the order was finally entered approving the sale. Michael V. Ostrowski (whose wife, Helen, is one of the petitioners) admits that when the court asked Noel whether there were any objections to the confirmation of the sale he answered "No."

Without analyzing the evidence in detail we state we have given careful consideration to it and that any finding for petitioners would be against the manifest weight of the evidence. The finding of the trial court on issues of fact on appeal has the same weight as the verdict of a jury. The situation upon the confirmation of the report of sale was this. Petitioners might have objected and taken an appeal. They might possibly have availed themselves of a bill of review to correct supposed error manifest on the face of the decree. They did neither. They did not object to the order approving the sale to the trustee, in fact their representative stated there was no objection. They waited

until the time elapsed within which the court had jurisdiction to set aside the order and then demanded the trustee pay them in cash their pro rata share of the amount he bid for the property. On clear principles we hold they are estopped. *Bondy v. Samuels,* 333 Ill. 535; *Provident Mut. Life Ins. Co. v. Norcott,* 366 Ill. 82; *Chicago Title & Trust Co. v. Prendergast,* 335 Ill. 646. Silence would have estopped petitioners. They went further and affirmatively assented.

It is well settled an order approving a report of sale and distribution is a final order from which an appeal may be taken but after term time cannot be vacated except upon appeal or writ of error or bill of review. *Madison & Kedzie State Bank v. Cicero-Chicago Corrugating Co.,* 351 Ill. 180; *Bushnell v. Cooper,* 289 Ill. 260; *Mellin v. Phillips Trust & Savings Bank,* 296 Ill. App. 205.

Petitioners rely on *Chicago Title & Trust Co. v. Robin,* 361 Ill. 261. Under the law as stated there the trustee here was without authority to bid and buy in behalf of nondepositing bondholders who had not authorized him so to do. The report of sale to the trustee (presumably) would not have been approved if petitioners had objected. The order approving the sale and distribution to the trustee could have been challenged by appeal, writ of error or bill of review. In the *Robin* case the order was objected to when entered and an appeal taken. Here petitioners, with notice and knowledge, did not object or appeal or file a bill to review. Even now they say they wish the erroneous order affirmed with directions to the trustee to pay to them in cash their pro rata share. The complainant in the suit was the trustee. The report of sale said the sale was made to him as trustee. The vouchers attached showed payment to the trustee by application of the indebtedness found to be due to him as trustee. The practice is usual, well known and has been approved by the courts. *Slack v. Cooper,* 121 Ill. App.

485 (aff'd 219 Ill. 138); *Himmel v. Strauss,* 288 Ill. App. 566.

The thing petitioners ask would be unfair to the trustee and to other bondholders. It is suggested that solicitors Ostrowski and Noel, in the absence of express authority from their clients, were without power to consent to the action of the trustee in buying the mortgaged premises in their behalf. 7 Corpus Juris Secundum, 897, 922 and 932, and *Village of Dolton v. S. Ellen Dolton Estate,* 331 Ill. 88, are cited. It is true, as held in the *Dolton* case, attorneys may not act in fraud of their clients. The *Dolton* case, however, expressly says: "If an attorney acted without authority from his client the remedy of the client is against his counsel."

The same authority points out that even in case of fraud on the part of the solicitor the court is not thereby deprived of jurisdiction. There is no suggestion of fraud here.

Petitioners argue the order approving the report of sale is erroneous but they do not ask to have it reversed. On the contrary they seek to have it carried out as construed by them. Their contentions are in this respect inconsistent. On the authorities already cited we hold that the time within which the order of sale might be set aside having expired, the circuit court was without authority to enter that specific part of the order which set aside the sale to the trustee and directed another sale to be made. That part of the order will be reversed. On the other hand, the petition of these intervenors is without equity and was properly dismissed. That part of the order will be affirmed. The trustee will hold the certificate of sale for the benefit of intervenors and other bondholders.

*Affirmed in part and reversed in part.*

O'Connor, P.J., and McSurely, J., concur.